Chief Justice Robertson
delivered the Opinion of the Court— from which Judge Nicholas dissented, upon the principal point.
This is an action of ejectment, in which four points are presented.
First. Is a sheriff’s deed to two persons, for land sold by him, under execution, to one of them, as the nominal put chaser, effectual to pass the legal title to both ?
Second. Is land which had been granted by the commonwealth to the “ heirs ” of the person in whose name it had been entered and surveyed prior to his death, subject to sale under an execution against the estate which-had descended to the heirs ?
Third. Have the purchasers of such land, under such an execution, a right, after they had obtained-the sheriff’s deed therefor, to use the names of the heirs, against their will, in a demise in an action of ejectment, instituted for recovering the possession of the land in the occupancy of a stranger ?
Fourth. Is the legal title (of the defendant in an execution) to land in the adverse possession of another person, subject to sale under the execution ?
the^deecf made One to- whom land is- stricken off, at a sheriff’s sale, may have to whomsoever he will.
to the ‘heirs’ of m whose Land- patented one name it was entered and surveyed,they take l)y descent and it is subject to sale under execution against decedent6tcf his heirs descended.
The purchaser conveyeíhy11^ sheriff,under ex fhe^estate^f1^ decedent toxins bas no right to’ use their names, without their consent, in an co°ver\heland'
The leval title of a defendant adverseposseser, is subject to levy, and sale, under execution.
—JudgeNicho-opinion-See ps. 217 §*c-
First. The sheriff may make the deed and pass the title to the actual purchaser, or to himself and another secretly associated with him in the purchase, or to any person to which the highest bidder may have sold, or who may have been substituted, by mutual consent, as the purchaser.
Second. If the equitable, or inchoate, legal title de~ scended, the fact that the patent vested the perfect legal title in the heirs, did. not convert them into purchasers.’ But the peijfet as well as the imperfect right was derived by descent^or inconsequence of the right of inherit ance_ And consequent*!; tate which had descendei the land should be deemed es-the heirs,
Third. If the title of deed, a demise in their e heirs passed by the sheriff’s names was unavailing ; and if their legal title was not transferred by the deed, no r^lf; whatsoever was vested by the sale, or by the deed, And therefore, the names of the heirs should not be used without their consent. If tire deed passed the title of the heirs, the purchasers held all the title which the heirs had held, and were entitled to all the protection which they themselves could have claimed before the sale; and consequently, no prejudice can- have resulted to the purchasers from a refusal to permit them to prosecute a suit jn {¡ie names of the heirs.
Fourth In October, 1827, a majority of this court, ( Chief Justice Bibb,, and Judge Owsley concurring, and, Judge Mills dissenting,) decided that the legal interest of a debtor, in land, was not liable to-sale under execution. against him, whenever it was in the ad verse possession of any other person. [McConnell vs. Brown &c. 5 Mon. 478.]
The first section of an act of 1798 declared, that “lands, tenements, and hereditaments ” might be sold “by virtue . ' . ° . ... of writs oí jien jactas.” The second section authorized a sheriff to make the amount of the execution by a sale* of the debtor’s lands, tenenements and hereditaments m possession, reversion or remainderWhether the phrase “ in possession ” meant an actual pedis possessio, according to the literal and popular import of the word possession, or should be understood, in its technical import, as contradistinguished merely from reversion and remainder, *213 and therefore meaning all legal titles not held in rever sion or remainder — was a question which, although it had frequently occurred, had never been directly and expressly decided, until it was settled in the case of McConnell vs. Brown, (supra.)
A diversity of opinion as to the correctness of that decision, and also as to the policy of the law as thereby expounded, may be presumed to have existed, to a great extent, in the community. “ An act to amend and reduce into one the execution laws of this state,” approved February 12th, 1828, only about four months after the date of the decision in McConnell vs. Brown, provides, in the thirty fifth section, that “ all legal title to real estate shall be liable to sale by execution, whether in actual possession or not.”
That provision should be so construed as to operate in some way, and for some purpose. But it would be more than superfluous if it should be interpreted to mean only the title of a person actually resident on the land, or seized of it by construction, or in fact; for such a title could have been sold under execution had there been no special provision to that effect in the act of 1828. This proviso, in the thirty fifth section, was inserted for some practical purpose. It is a distinct and substantive enactment, and must have a, peculiar effect which the statute would not have had without it. For what then must it have been intended ? We think that the case of McConnell vs. Brown gives the answer.
The legislature must be presumed to have intended that the legal title, of whatever grade or character, should be subject to sale under execution — whether that title be in fee simple, or for years, or in possession, or in action, joint or several, in presentí or in futuro. “ Title” is substituted for “ land ;” and, “ whether in actual possession or not,” was intended to mean, when connected with the word ‘■’•title,” that any legal interest in land, whether that interest be partial or total, inferior or superior, or whether the land be in the possession of the defendant in the execution or of another person claiming adversely to him, shall be subject to sale under the execution. That seems to be the plain, common sense import of the pro *214 viso ; and we do not feel the disposition, or claim the authority, to blot out the whole proviso, or to resort to artificial, or minute verbal criticism, for the purpose of nullifying the enactment, or of frustrating its specific object, or effectual operation.
Moreover, our construction- of that proviso seems to be fortified, and the only plausible argument in opposition to that interpretation, weakened, if not destroyed, by the fact, that the thirty seventh section of the same act declares, that whenever a fieri facias shall have been returned nulla bona, the-creditor may file a- bill in chancery, for subjecting to the satisfaction of the judgment or decree, “ any equitable or legal INTEREST in any estate, real, personal or mixed, belonging to the defendant and Í hat the thirty ninth section, in like manner, provides for the subjection of “ any chose in. action, real, personal, or mixed.”
. These two last sections evince, that the legislature deemed it good policy to subject to the payment of debts any interest in land, legal or equitable, in.possession, or in action. They shew certainly, that the interest of the execution debtor may be made liable. Other parties may be brought before the court; but-if the “interest” of the debtor be unincumbered, no other person than himself will be a necessary defendant, because his interest, whatever it may be, can be subjected.
It seems to us that, as a chancellor has power to decree the sale of a debtor’s interest, legal or equitable, in possession or in action, whenever a fieri facias against him shall have been returned nulla bona, the legislature should not be presumed to have intended, that the execution itself should not be be levied on the debtor’s legal interest in land in the actual possession of a stranger. Such a return on a fien facias will authorize the chancellor to decree the sale of land to which the debtor has a legal title, and which is not in his own actual possession. The return gives the chancellor jurisdiction, tor the purpose of compelling discovery, or otherwise removing doubts or difficulties which might have retarded or embarrassed the usual and legal remedy. And, according to the statute, the chancellor may, undoubtedly, interpose, and de *215 cree a sale of the legal right, even though there was no impediment to the enforcement of the legal remedy. It is not the fact, therefore, that the debtor is not in the possession of the land, but the fact that the execution has been returned nulla bona, which gives to the chancellor jurisdiction, to decree the subjection of his legal interest to the satisfaction of the debt ; and the statute does not say, that the interest of the adversary claimant shall be concluded by the decree, or be subjected to sale.
It is not deemed essential here to enquire, whether, in any case, the chancellor, entertaining a bill for subjecting the legal interest of an execution debtor to the satisfaction of the debt, should, or could, bring before'him a stranger in adverse possession, under an independent legal title, and adjudicate on the conflicting legal rights; for his right to d© so could not affectthe question of legal liability to the execution. The only motive for filing a bill in such a case would be to obtain a discovery of title, or a removal of incumbrances or liens, or to compel the sale of that ■which the sheriff was afraid to sell under an execution. If it be right to sell under a decree, why should it be deemed wrong to do the same thing under an execution, as in both cases the interest of the debtor only is sold ? That which is deemed good policy in the one case, should not be denounced as bad policy in the other. We admit that we consider the policy as very questionable in either case, though equally so in each. But that question belongs exclusively to another department of the government, and has, as we think, been positively settled by legislative enactment.
It is the duty of this court to presume, that the legislature understood its own purpose, and the import and effect of its own language ; and we should not, without conclusive proof, decide that it so far blundered as to insert, in an important and permanent statutory system, a distinct, positive and substantive provisiofc, without design, or in such terms as to render it not only inoperative, but incongruous and illusory.
It is the duty of this court to give some effect to every legislative provision, (whatever may be thought of its expediency,) unless it be inconsistent with the tenor or *216 object of the entire enactment, or with some other provision in it, or with fundamental law.
Sales of laud, by authority of law, are exempt from the operation of the cham perty laws.
Where land is levied on as the property of a aefen’t, against whom the possession is held adversely, the valuation must be of the land, (not merely of the defendant’s claim,) without deductionforthe adverse possession.
We cannot reasonably or fairly restrict the provision which has been quoted from the thirty-fifth section of the act of 1828, to constructive possession. There is no ground for such an interpretation ; and, as already suggested, if the legislature meant only that land in either the actual or constructive possession of the debtor, might be sold under execution, its express enactment for that purpose, was not only superfluous, but unaccountably inappropriate in its terms. The legislature must have intended (if any thing was intended,) that the legal inter, est of a debtor should be subjected to execution, even though a stranger might be in the “ actual possession ” of the land ; and consequently, in speaking of the debtor, it used, with a converse and correspondent import, the terms “ whether in actual possession or not.” If a stranger be in adverse possession, then the execution debtor is not in the “actual,” or constructive, possession. And it cannot be material, who may be in the actual possession, or how; the debtor is not in the “ actual possession; ” and the act, declaring that his legal interest shall be liable, whether he be “in actual possession or not” must apply to him, whatever may be the reason why he is not in actual possession.
The champerty doctrine does not apply "to sales under execution. Its policy interdicts voluntary alienations of land adversely held, but not judicial or official sales, in invito.
Nor can any difficulty in assessing the value of land adversely occupied, have any decisive influence. The land, and not the title, must be valued, unless the title be limited.
If the debtor have the best title in fee, and the land be sold at a sacrifice, he may escape loss by a redemption. If his title be not the best, or the land sell for a fair price, he will have no cause to complain. And it is as easy to value the land when in the adverse possession of a stranger, as when it may be in the possession of the execution debtor, but is known to be covered by a conflicting clajm.

Judge Mcho-iaa’ Dissent.

However, these considerations, whatever should be their influence on the legislative will, cannot be urged effectually or legitimately to prove that the provision in the thirty fifth section, means nothing, or shall have no operation. Ikt lex scripta est, is enough for this court. The proviso is clear and express, and cannot be defeated by extraneous considerations of policy. The statute of 1828 has no where intimated that land adversely possessed, shall not be liable to execution against the holder of a legal interest out of possession. Had such an intention existed, it should have been expressed, and there would have been no sort of object or propriety in the language which has been employed in the thirty fifth section, and which, comprehensive and unqualified as it is, seems to be irreconcilable with any other idea than that a legal interest in land may be sold under execution, whoever may be in the actual possession of the land.
Without assuming legislative power, or distorting, or entirely disregarding the proviso in the thirty fifth section of the act of 1828, we cannot withhold its application-to this case.
Wherefore, this court. [Judge Nicholas dissenting) feels bound to decide, that the legislature has authorized the sale, by execution, of a legal title of the debtor in land in the adverse possession of another person.
Wherefore, as this court does not concur with the circuit court in all the points which have'been presented, the judgment must be reversed, and the cause remanded for a new trial.