Judge Ewing
delivered the Opinion of the Court.
executi0n issued from the Franklin Circuit Court, in favor of the Bank of Kentucky, Rennick and others, against Antoine Dupuy, for the costs of a decree, amounting to five dollars, ninety five cents; and was levied on three lots in South Frankfort, with a brick house and other improvements thereon; which was sold by the sheriff, and Carr became the purchaser, and received the deed of the sheriff, and afterwards sold and conveyed the same to John J. Marshall; who brought this ejectment against the tenant in possession; and Dubois and Longer, as landlords were entered as defendants, and a verdict and judgment were recovered against them; from which they have appealed to this Court. ,
Several questions were made, during the progress of the case; but we deem it unnecessary to consider any but one: namely, the operation of the statute of champerty upon the case.
It was admitted and proved, in the progress of the case, that Dupuy, the defendant in the execution, was in possession of the lots, claiming the same, by regular derivation of title, from the Commonwealth, in 1819, and had been for many years before. That in 1820, Dubois and Longer entered upon the same, by their tenant, “claiming it as their own, in virtue of an alleged purchase from Dupuy; and had held the same, as such, by their tenants, ever since. And that, at the time of the execution and sheriff’s return, and delivery of the deeds by the sheriff to Carr, and by Carr to Marshall, Thomas B. Monroe was in possession of the premises, holding the same as the tenant of Dubois and Longer. That he *337 never attorned to Carr, or Marshall, but held adversely to their claim, under the claim of Dubois and Longer; and that Carr never claimed Monroe as his tenant. Upon which proof, the defendants moved the Court to instruct the jury — 44 that the deed by Carr to Marshall did 44 not pass the titlewhich motion the Court overruled, and instructed the jury — 44 that no attornment by said 44 Monroe to said Carr, was necessary, to entitle the les44 sor of the plaintiff to maintain this action; the pos* 44 session held by Monroe, as the tenant of the defend-44 ants, after the sheriff’s sale, was amicable to the title 44 acquired b^ Carr, and not adversary; and that there-44 fore, the sale was Carr, was not protected by law; 44 and the title of the defendant in the execution, passed 44 by the deeds to Marshall, the lessor of the plaintiff.”
Any title wliich ■a defendant in an execution has to land, may be levied on and sold, even while another claimant has an adverse possession of it; for the champerty act does not apply to judicial sales. But the purchaser cannot sellitagain,while so held, for to a sale by him, the act does apply.
The first section of the act of 1824, against champerty and maintenance (1 Stat. Law,) provides, “That 44 no person shall sell or purchase, by deed of convey-44 anee, or bond, or executory contract, any pretended 44 title or right to land, of which any other person than 44 such vendor or vendee shall, at the time of such sale 44 or purchase, have possession adverse to the right or title 44 so sold or purchased. And every deed, conveyance, 44 bond, or contract, made, executed, or entered into, in 44 violation of this section, shall be void, and no right of 44 action shall accrue to either party under such deed of 44 conveyance, bond or contract.”
It has been settled by this Court, that the possession is not protected by this section against sales under execution. Its policy does not interdict judicial or official sales. 1 Dana, 216, Frizzle et als. vs. Veach. Nor does it interdict the sale of the title of the defendant in the execution, though the land is in the adverse possession of a stranger. 1 Dana, 211. But to sales made by the purchaser under execution, the section applies, and he can neither convey the land, while the adverse possession continues, nor make any champertous contract concerning it. 2 Dana, 325, Violett vs. Violett.
The only question to be settled is, whether the conveyance made by Carr to Marshall, is affected by the first section of the champerty act.
Wherever a party is in possession of land that 'he claims, no matter by what -title or right, or whether any, the champerty act of 1824 protects him; and renders •a sale (not judicial) by any other •claimant, void.
A tenant, or one who holds under an executory con tract, is estopped from controverting the title of him under whom lie entered. But the party who would avail himself of the estoppel,must show it.
•‘Apurchase’(the nature of which is unexplained) -should be presumed to be— not an executory contract — but rather, a complete purchase, under which the possession is adverse to the vendor and ■.all the world.
This section looks to the protection of the possession; and it is equally protected, when held adversely, whether it be united with the right of possession, or right of property, or not. The language of the act is, that no per-soon shall sell or purchase, when any other person, at the time of such sale, shall have possession adverse, &c. The policy of the act was, evidently, to secure the possessor, with or without title, against sales of outstanding claims, whereby his possession might be more exposed to hazard,by having to contend with a more wily, influential, or litigious adversary. To bring himself within the operation of the section, it is not necessary for him to show title. His adversary possession may be proved without it, and when proved, he has brought himself within the protection of the statute. If the possessor entered upon land as his own, claiming the same as such, and continued to occupy it under such claim of right, by himself or his tenants, it seems to this Court that he has made out a case of possession adversary to the whole world, which will entitle him to the protection contemplated by the statute.
It is true, if he entered as tenant, or quasi tenant, under an executory contract, as he would be estopped to controvert the title of his landlord, or quasi landlord, so he would be estopped to claim possession adverse to either. But he who relies upon the estoppel in either case, must show it, or produce such facts as will exhibit the possessor in that attitude which will make the estoppel operate upon him.
In this case, the defendants, as early as 1820, entered upon the premises in contest, claiming it as their own, in virtue of an alleged purchase from Dupuy. They claimed the property as their own, occupied it as such by their tenants, and did not pretend to hold possession amicable to the title of Dupuy, or any other. If they held as the tenants of Dupuy, or under an executory contract from him, it behoved the plaintiff to showit,to entitle himself to the benefit of the estoppel relied on against the defendants. It cannot be implied, by the Court, that his claim in virtue of a purchase from Dupuy, means and must be construed to mean, an executory contract of purchase- *339 Such implication would be against the technical meaning of the term used, and when taken in connection with the facts proved, that he entered and claimed and leased it as his own for many years, would be against their common understanding and acceptation. Yet the Circuit Court must have construed the purchase an executory contract, which placed the defendants and their tenant Monroe in the attitude of quasi tenants to Dupuy, and to Carr after he purchased the title of Dupuy; and treating them as such, instructed the jury u that the possession “ held by Monroe, as the tenant of the defendants, after “ the sheriff’s sale, was amicable to the title acquired by “ Carr, and not adversary.” Such instruction could not have been given, but by giving to the proof the construction that the contract was executory. For if it were executed, his possession would surely be adversary to the vendor and the whole world.
Whether a possession was adverse or amicable,. is a question of fact to be decided by a jury. The Judge errs when he gives peremptory instructions upon the fact assumed either way.
The Court was not warranted in giving such interpretation to the word purchase. It’surely might, at least, be as well implied, that the purchase was by executed contract, as by executory, especially when taken in conjunction with the other proof.
But the instruction of the Court is clearly erroneous-in another respect: the Court assumed the fact that the possession was not adversary, and that, therefore, the title passed to Marshall. It is the province of the jury to weigh the evidence, and form their own conclusions, whether the possession was adversary or amicable. And it was error for the Court to assume, as proven, that the possession was amicable. Itis the province of the Court to hypothecate instructions propounding the law, upon-the belief of the jury as to the existence of a certain state of facts. The court disregarding this rule, in this instruction, has assumed that the possession was not adversary, but amicable, and has unconditionally instructed the jury, that the title passed from Carr to Marshall by the deed. In this, the Court has invaded the province of the jury.
It is, therefore, considered by the Court, that the judgment of the Circuit Court be reversed, and the cause remanded that a new trial be granted; and that the plain tiff's in error recover their costs in this Court.