*Pindell* for plaintiff.

HUNTER
*vs*
CHRISMAN, &c.

A covenant purporting to be by A. B. R. to which is added, I, J. R. P. will be security of said A. R. E., and signed both, is the joint covenant of both, and they may be jointly sued.

---

6bm463
122    172

## Hunter *vs* Chrisman, &c.

### APPEAL FROM THE JESSAMINE CIRCUIT.

### *Ejectment.  Possession.  Boundary.*

JUDGE MARSHALL delivered the opinion of the Court.

IN this action of ejectment, the plaintiff's right of recovery is asserted on the sole ground of twenty years' possession in those under whom he claims.   There seems to be no question upon the evidence that there had been a possession by those from whom the plaintiff claims, of more than twenty years duration, before the entry of the

ELECTMENT.

*Case* 97.

*June* 9.

The case stated.

defendant, and within the boundary now claimed by each party, but the question is as to the extent of that possession. For the purpose of illustrating this question, the plaintiff read in evidence a deed from Fishback to Blakeman dated in 1821 ; a deed from Blakeman to Ferrill dated in 1835, and one of the same date from Ferrill to Chrisman, one of the lessors.

Fishback claimed an interest in Early's patent of 2000 acres. His deed to Blakeman conveys by metes and bounds 311 acres as a part of Early's 2000 acres, calls for the patent lines, and contains no call which, so far as appears in this case, can make it embrace land outside of the patent boundary. But there seems to have been at the date of the deed, and for years afterwards, an uncertainty or mistake as to the true position of the patent line from the fourth to the first corner, both of which seem to have been sufficiently established by the evidence in this case. They are represented on the plat by the letters K. and A., and the call of the patent indicates a direct line between the two, which, however, does not appear to have been run, or at least not marked in making the original survey. The direct line appears to comport entirely with the calls of Fishback's deed. It appears, however, that although Fishback claimed nothing outside of Early's patent, an improvement was made and possession held by him or his tenant, outside of the direct line from A. to K ; and that Blakeman though professedly limiting his claim to the patent boundary, continued the same possession and extended his improvement. More than twenty years before the entry of the defendant, Blakeman marked a double elm at the place where he supposed the closing line of the patent would cross the Muddy branch, and ran and marked a line from that point, but finding that he came to the cliffs of the Kentucky river at too short a distance to be in Early's patent line, desisted from the survey and never completed any boundary from this line now represented by the figures 1 and 2, nor was the patent line ever run until after his deed to Ferrill was made. That deed, however, calls to begin at the double elm in Early's old line, and running up the Muddy branch, and thence eastwardly, &c. calls

again for Early's line to the beginning. The double elm is a considerable distance outside of the direct line from K to A, and the deed from Blakeman to Ferrill is represented on the plat as including 30 acres outside of that line, and bounded by lines running from 1 to 2, 3, 4, 5, and 1, 4 and 5 being in the direct line A K. Blakeman, who was himself a witness, states that he claimed no land that was not within Early's patent, and his brother proves that he said while in possession, that the land between Early's patent line and the river, belonged to Woodson, under whom the defendant holds.

If it could be assumed that the lines from 1 to 2, 3 and 4, formed a part of Early's patent boundary, it might be true, upon the facts appearing, that Blakeman's possession should be understood as having extended to those lines; and, his possession added to that of his vendees, would have been of sufficient duration to authorize a recovery in this case, although there is no chain of documentary title from the patentee, and the patent itself is not exhibited. But the jury have not found, and as we conceive, were not authorized by the evidence to find, such to have been the patent boundary. The direct line from K to A must, upon the evidence now in the record, be assumed as the true boundary; and upon that assumption, though it be admitted that the possession of Ferrill, under his deed from Blakeman, may have extended to the boundary now claimed, and especially after those boundaries were actually run out and marked, if there were nothing to oppose such extension, still this possession was not of sufficient duration to authorize a recovery; and the question arises whether Blakeman's possession outside of the line K A, can be regarded as extending beyond his actual close. It may be inferred that the adjacent land outside of the line A K, was patented, though no patent is exhibited; and if there was any possession under that patent when Blakeman entered, his possession, even if he had had a marked boundary, would have been limited to his close. This is well settled; and even though there was no adverse possession of the land adjacent to the line A K, and no patent, still as Blakeman entered and held possession, claiming under

*The possession of land intended to be within a particular survey, but by mistake of the possessor extended beyond such survey, but by no marked boundary, though held for 20 years gives no right to hold beyond the actual inclosure.*

Early's patent, and admitting that the land between its boundary and the river belonged to another, we are satisfied that his erroneous supposition that he was within the boundary, would not suffice to give a constructive extension to his possession beyond his actual close, unless there were some distinct demarcation of the boundary which he supposed to be the patent line, or to which he claimed and intended to be possessed. A man cannot, by taking actual possession of one place, extend that possession by a mere indefinite claim, without title or boundary. If Blakeman, when he marked the double elm under the supposition that it was in Early's line, had, notwithstanding his discovery of the mistake, run the lines now claimed by his grantees, and claimed to be possessed to that boundary, it would be going far to say that he thereby acquired possession to that extent. But as upon discovering the mistake, he abandoned the prosecution of the survey and made no boundary, he did nothing to define his claim, and therefore, nothing to extend his possession beyond his actual close. His abandonment of the survey because the line from 1 to 2 was discovered to be outside of the patent under which he claimed, is utterly inconsistent with, and negatives the supposition that he then continued to claim to the line 1 2, as the boundary of the patent, or of his deed from Fishback ; and although his deed to Ferrill, made in 1835, shows that he then claimed to the double elm, there is nothing to show at what period, if any, after the abandonment of the survey, and before the date of that deed, he had made this claim, and certainly nothing to show that he had previously extended his possession outside of the patent, to any boundary beyond his actual close.

The cases of *Smith* vs *Morrow*, (5 *Litt.* 210,) and *McKinney* vs *Kenney*, (1 *A. K. Marshall*, 461,) decide in effect, that a person taking possession under one claim without intending to intrude on another, but accidentally extending his enclosures over the line, acquires no possession outside of his close. The case of *Brooks* vs *Clay*, (3 *A. K. Marshall*, 546,) decides that the possession of the defendants in ejectment was confined to their actual close, because they exhibited no demarcation by en-

try, survey or patent, so that there was nothing by which it could be extended beyond the actual close, and nothing by which it could be limited ; and it was further decided that the possession, though of more than twenty years continuance before the commencement of the ejectment, and although within the twenty years the land had been surveyed and granted by junior patent to the possesser, did not bar the action except to the extent of the close. These cases, which accord with the uniform tenor of the decisions on the subject of possession and boundary, sustain the principles which have been advanced in this opinion. We come, therefore, to the conlusion that upon the facts of this case as now presented, Blakeman had no consructive possession outside of the direct line A. K., beyond his actual close. And whatever may have been the extent of possession acquired by his grantees, it had not, as now appears, independently of Blakeman's possession, existed for twenty years before the entry of the defendant. It follows, that there could be no recovery by the plaintiff, except so far as the defendant was in possession of land which had been within the actual close of the lessors, and those under whom they claim for twenty years before his entry ; and there being no proof of any such possession by the defendant the verdict was contrary to law and evidence.

Wherefore, without particularly noticing the instructions, further than to say that they do not present the case to the jury in exact accordance with the principles of this opinion, the judgment is reversed and the case remanded for a new trial.

*Hewitt* for appellant : *Willis* for appellees.