LITTLE, &c.
vs
BISHOP, &c.

Rankin for plaintiff; V. Monroe for defendant.

---

EJECTMENT.

Case 60.

## Little and Tungate vs Bishop and McCann.

APPEAL FROM THE GRANT CIRCUIT.

*Kentucky land warrants. Champerty. Verdicts in Ejectment.*

January 29.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

THIS is an appeal from a judgment rendered against the defendants, in an action of ejectment, in which

the plaintiff declared in three counts—first, on the demise of Bishop—second, on the demise of McCann—and third, on the joint and several demises of Bishop, McCann, and divers other lessors, who need not be named. The plaintiffs read on the trial a patent for 1,000 acres, granted to the lessor, Bishop, in May, 1840, "by virtue and in consideration of three warrants from the County Court of Grant county," and upon a survey, bearing date the 4th day of April, 1840. He also read, without objection, a commissioner's deed, conveying the northern half of the said 1,000 acres from Bishop to McCann, as the purchaser under a decretal sale, and proved that the defendants were in possession within the patent boundary. The defendants read an elder patent to Watson, and proved that it covered all the land in possession of defendant, Williams, for whom a verdict was found, and that it covered a considerable portion of the land in the possession of Little and Tungate, the other defendants. The defendant, Little, also introduced evidence conducing to prove that his possession was included within the boundaries run off under a title bond to his brother, and on which he was settled before and at the time when Bishop made his survey and obtained his patent. But the plaintiff's rebutting evidence conduced to prove that the possession of Little within the patent of Bishop, was not covered by the bond ; and conduced to prove as to Tungate, that he held his possession under a lease from McCann, and that he had improperly got possession of the lease, and destroyed it under circumstances which authorized the inference that he thereby disclaimed the tenancy.

The record does not show that any instructions were given by the Court, but shows that two, asked for by the defendants were refused. The jury found the defendant, Tungate, guilty of the trespass, &c. in the declaration mentioned, and found the defendant, Little, guilty for all the land in his possession at the service of the notice, outside of Watson's patent, and inside of Bishop's. A motion for a new trial, on the grounds—first, that the Court had misinstructed the jury—and second, that the verdict did not ascertain the

LITTLE, &c.
vs
BISHOP, &c.

quantity of land held by each of the defendants, was overruled, and a judgment was rendered against Little for the plaintiff's term, &c., in and to the land, &c., in the declaration mentioned, which lies within Bishop's patent, and outside of Watson's, and against Tungate for the plaintiff's term, &c., in the tract of land in the declaration, &c.

The appellants, Little and Tungate, contend in this Court, that the Circuit Court erred in refusing the instructions asked for by them, and in refusing a new trial, and that the verdict is insufficient and the judgment not authorized by it. The principal questions grow out of the refusal of the instructions, and especially of the first, which asked the Court to tell the jury that the patent of Bishop was void.

The patent of Bishop, as already shown, professed to be founded on three warrants from the County Court, and upon a survey made in April, 1840. It is contended that at the date of this survey there was no law authorizing the surveying of such warrants, or the returning of the plats and certificates to the Register, or the issuing of a patent by him upon such survey; but that these acts were at that time prohibited by law, and therefore that the patent was void. It is also contended that the patent was void by the express declaration of the statutes on which claims of this class are founded, because it interferes with the elder patent of Watson, and also, because it interferes with the settlement of Little under a bond. And that if not wholly void on these two last grounds, it is at least void to the extent of the interference, and therefore conferred no title or right of recovery as against Little, and no title which could avail to create the relation of landlord and tenant, as between McCann and Tungate, though there may have been an actual lease.

On reference to the statutes relating to the disposition of the vacant lands of the Commonwealth, it appears that up to the year 1835, they had been appropriated under warrants issued by the Register, which authorized the survey of the land intended to be appropriated, upon the return of which to the office of the

The vacant lands previously to 1835, were appropriated under land warrants from the Register of the land office. At that

Register, (required to be made generally within a year,) he was authorized to issue patents. In February, 1835, a radical change was made in the system by an act which vested all the lands within this Commonwealth lying east and north of the Tennessee river, which should be vacant and unappropriated on the first day of the succeeding August, in the respective County Courts of the counties in which the land may lie. The act provides that all sales of lands shall be made by the County Courts, whose "orders of record" are to be the authority to the surveyor to survey the land sold, and the survey being returned to them and ordered to be recorded, a copy of the order and survey certified by the Clerk of the Court and delivered to the Register, authorized the issuing of a patent. The money received on these sales was constituted a fund for the improvement of roads, &c. within the several counties. And the patents which might issue on surveys made under the act, were declared void in case of interference with certain other claims, or with the settlements or boundaries of actual settlers holding a deed or bond for the land. An amendatory act of 1836, if it embraces at all the claims originating under the act of 1835, declares the entry, survey and patent void so far as they interfere with lands patented before the date of the act.

In February, 1837, an act amendatory of the act of 1835, directed the appointment by the County Courts, of a County Treasurer, and authorized him to make sale of the vacant lands in the county, and upon his receipt for the money, to be recorded and filed away by the Clerk of the County Court, the Clerk was to make out and record a warrant, stating the quantity of land and the price; and this warrant authorized the surveyor to make the survey, a plat and certificate of which delivered to the Register, authorized the issuing of a patent, and the surveyor and Register were directed to proceed in the same manner in all respects as by the former laws had been required in relation to treasury warrant claims.

The three succeeding acts of February 1st and 8th, 1838, and February 5th, 1840, authorize the Register

---

*Margin notes:*

LITTLE, &c.
vs
BISHOP, &c.

date the vacant land North of the Tennessee river, was vested in the county courts of the counties in which it was situated, and the courts authorized to sell, &c.

Surveys upon county court warrants, interfering with certain other surveys, or actual settlers, void by the statute of 1835. The act of 1836 declares all surveys under such warrant void, so far as they interfere with lands patented before the date of the act. The act of 1837 authorized the appointment of a county treasurer to receive the price, and upon his receipt filed, the clerk

to receive and register surveys made under the act of 1835, and according to its provisions after the passage of the act of 1837, establishing a new mode of proceeding, and make no exception on account of any interval between the origin or survey of the claim and the return of the survey to the Register. These acts have no reference whatever to claims originating in the manner prescribed by the act of 1837, but are evidently based upon the idea that the mode of proceeding prescribed by the latter act should supercede that which the former had directed. The prohibition contained in the proviso. of the second of these acts, that the surveys shall not be received by the Register if made after the 1st day of January, 1838, applies to surveys made under the provisions of the act of 1835, and does not affect those made under the subsequent act, as to which it was not necessary to make special provision for their being recorded and registered. And as the act of 1837 provides a permanent system, the continuance of which without any new legislation, is clearly implied in the act of 1832, which regulates the office of the County Treasurer as a subsisting and permanent one, it would be absurd to suppose that these intervening statutes were intended to prevent the perfecting of claims originating in the authorized payment of money to the County Treasurers, and in authorized warrants and surveys founded upon such payments.

If then the Court be authorized to pronounce a patent void in this case, on the ground that it appeared on its face to be founded on a survey made at a time when there was no authority of law for receiving such survey in the Rgister's Office and issuing a patent upon it, and if it were certain that a survey made under the orders of the County Court according to the provisions of the act of 1835, could not, if made since the act of 1837, be legally returned and carried into grant without the aid of enabling statutes authorizing these acts ; and if, there being no act either authorizing or recognizing a survey made in April 1840, upon the orders of a County Court, under the provisions of the act of 1835, a patent founded on such a survey should be deemed void,

it is still obvious that before the patent in question could be held void on this grond, it must be determined upon its face that the survey was made under the orders of the County Court, and not under a warrant from the Clerk of that Court, founded on the receipt of the County Treasurer—and this, as we conceive, cannot be so determined.

The patent, it is true, professes to be issued in virtue of three warrants from the Couty Court of Grant county. But we do not find that the word "warrant" is used in any of the legislative acts as describing the authority for the survey derived from the County Court. On the contrary, the act of 1835 speaks only of "orders of record," and the first enabling act, (February 1st, 1838,) after the change of system in 1837, speaks of surveys approved of by the County Courts, and recorded and certified by the Clerks according to the provisions of the act of 1835. The two succeeding acts refer evidently to surveys of the same class, but by more general description. And it is only in the act of 1837, that the word warrant is used as describing the instrument or authority under which the survey is to be made. This warrant is to be issued from the Clerk's office of the County Court, by the Clerk of that Court, and for land vested by law in that Court; and if it be not described with perfect accuracy when called a warrant from the County Court, because it is not expressly ordered by the Court, neither is the term "warrant" properly descriptive of the recorded order of the County Court directing a survey to be made. Such order is, it is true, an authority, and in that sense a warrant. But when the patent says in virtue of three warrants from the County Court, it does not mean three authorities, but intends to describe three instruments which gave authority. And as we cannot say that the language of the patent absolutely negatives the fact that the warrants were issued by the Clerk of the County Court, on the receipt of the County Treasurer, who is the officer of the Court, or that it proves with certainty that the survey was made upon orders of the County Court according to the act of 1835. We are satisfied that the

LITTLE, &c.
vs
BISHOP, &c.

The court cannot collaterally determine a patent void entirely where it is not so declared by law.

LITTLE, &C.
vs
BISHOP, &C.

patent does not on its face present the fact of its hav-
ing been founded on an illegal or unauthorized survey,
with sufficient certainty to authorize a decision that it
is void upon that ground, even if such decision be au-
thorized in this collateral proceeding, when no statute
declares the patent either void or fraudulent for this
cause. The doctrine and cases on this subject, are re-
ferred to in the case of *Ray* vs *Barker*, (1 *B. Monroe*,
368;) and *Taylor* vs *Fletcher*, (7 *B. Monroe*, 80.)

Then as to the interference with the patent of Wat-

Patents issued
by authority of
Ky.   warrants,
which issued by
authority of the
statutes of 1835,
6, 7, 8 and '40,
are void so far as
they  interfere
with  previous
surveys or actual
settlers.

son, we are of opinion that although the act of 1836,
may not apply to claims originating under the act of
1837, and the act of 1835 contains no denunciation of
voidness in the patent, in case of interference with a
previous patent, yet conceding that there may be in
the acts relating to treasury warrants or land office
warrants, a denunciation which should apply to
these internal improvement claims, such denunciations,
whether in express terms, limited to the interference or
not, must be so limited by construction. And the same
principle applies to the denunciation in the act of 1835,
in case of interference with an actual settlement. As,
therefore, the patent was not wholly void on account of
a partial interference with the elder patent of Watson,
or with the settlement and boundary of Little, under a
bond, even if this latter fact had been conclusively es-
tablished. These partial interferences, whatever other
effect they might have in the case, did not authorize the
giving of the instructions asked. And we need only
remark further on this point—first, that as the jury
were authorized to find that the settlement of Little,
so far as it was within the patent of Bishop, and out-
side of the patent of Watson, was not within the boun-
dary of the bond referred to, but to which it does not
conclusively appear that he was entitled, the verdict
is not against law or evidence on this point; and even
if an explicit instruction that the patent was void so
far as it interfered with his actual settlement and bound-
dary under a bond covering the land would have done
him any good, which cannot be presumed, he did not
ask for it, and has no right to complain that it was not

given. And second, that although the patent of Bishop be void as far as it covers the possession of Tungate within the patent of Watson, this voidness only precluded a recovery under the patent, and did not affect the right of McCann as lessor, to recover the possession held under his lease, unless he had procured the tenant to take the lease by fraud under color of the void patent. And as upon this point there is no conclusive inference or evidence, there is no ground for impeaching the verdict in this Court; and no instructions having been given or refused in relation to it, there was no error of the Court.

The second instruction asked for by the defendants, and refused by the Court, was to the effect that if Little was in possession when the commissioner's deed was made to McCann, they must find for the defendants. This instruction is based upon the applicability of the champerty act to the commissioner's deed, and assumes moreover, that Little was in the adverse possession of a part of the land conveyed, and that an adverse possession of any part of the land, would avoid the whole conveyance. Conceding that Little's possession was certainly adverse, and certainly within the bounds of the deed, we are not prepared to say that a limited adverse possession of a few acres within a large tract, would avoid the entire conveyance. But waiving this point, we are satisfied that the champerty act does not apply to a decretal sale for the coercion of a debt, any more than to a sale under execution, as to which it has been decided not to be applicable: *Frizzle, &c.* vs *Veach,* (1 *Dana,* 216;) *Dubois & Longer* vs *Marshall,* (3 *Dana,* 337.) And besides, the mere voidness of the deed would neither have prevented a recovery under the demise of M'Cann against his lessee, Tungate, as already shown, with regard to the voidness of the patent; nor would it have prevented a recovery against both Little and Tungate, under the demise of Bishop, the patentee. This instruction was properly overruled, and the Court not having been called on to instruct on the subject in any modified form, there was no error in not doing so, nor does it appear that the defendants

*margin notes:*

LITTLE, &c.
*vs*
BISHOP, &c.

The champerty act of 1824 does not apply to sales made under decrees of court. (1 *Dana,* 216; 3 *Ib.* 337.)

LITTLE, &c.      have sustained any prejudice by the omission, or that
vs
BISHOP, &c.      the verdict has been affected by any erroneous impres-
sion of the jury with regard to the law on this subject.

It was not essential to the validity of the verdict that
It is not essen-  the jury should have found the quantity of land in pos-
tial the jury shall
find the exact  session of each or any of the defendants. A general
quantity of land
in possession of  verdict against the defendants and a corresponding
a defendant in  judgment would have operated only to the extent of
ejectment.
the possession of the defendants within the title of the
plaintiff as stated in the declaration, and made out on
the trial. And there is no necessity for discrimination
as to the title of the plaintiff, except where he fails to
show title to a part of the land in possession of the de-
fendants or some of them, and claimed by the declara-
tion, nor for discrimination as to the possession of the
defendants, unless some of them show that their posses-
sion, or a part of it, though within the title claimed by
the plaintiff, is protected by some other title or circum-
stance. The jury have, in this case, discriminated as
far as there was any occasion for so doing, by finding
against Little only as to the land in his possession inside
of Bishop and outside of Watson; and the judgment,
though it does not refer, in terms, to his possession, is
by law limited to it, and has no greater extent. The
verdict and judgment against Tungate, though general,
are in like manner limited to the extent of his posses-
sion, and as the plaintiff had a right to recover to the
extent of the lease from McCann, which the jury, as
they might do, found to have been co-extensive with his
possession, there was no occasion for discriminatian as
to his possession. These principles are well settled as
applicable to verdicts and judgments in ejectment in
which less certainty is required than in other cases.

The authorities referred to by the appellants' counsel,
to show that the verdict should have discriminated as
to the title of the lessor, apply only to those cases in
which the lessors or those who show title, have but an
undivided interest in the title, and not having a right to
recover to the whole extent of the right of entry under
the same title, it is necessary that the extent of their in-
terest and recovery should appear in the verdict and

judgment, in order that the defendants may not be turned out of possession, but that the plaintiff or his lessor may be let into the possession of a certain and undivided interest only.   There was no need of such discrimination in this case, there being no evidence under the third count.   The record of the suit and proceedings under which the commissioner's deed was made to McCann, do not appear to have been referred to or used as a part of this case in the Circuit Court, and cannot be regarded as a part of the record in this Court.   We are, therefore, not called upon to say any thing as to the effect which they should have had if they had been in the case on the trial.

Wherefore, there being no other to the prejudice of the appellants, the judgment is affirmed.

*Armstrong and Burnett* for appellants; *J. & W. L. Harlan* for appellees.