CASE 19.—ACTION BY JOHN T. WOODWARD AGAINST GEORGE W. JOHNSON TO RECOVER LAND.—February 28.

## Woodward v. Johnson

Appeal from Lewis Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for defendants, plaintiff appeals. Reversed.

1. Lis Pendens—Prosecution of Suit—Diligence—A lis pendens is good to protect parties to a suit against purchasers for value from one of them only so long as the suit is diligently prosecuted.
2. Same—Negligence—A delay of more than 30 years in the prosecution of a suit to recover certain land without excuse constitutes such laches as released the property from the lis pendens as a matter of law, as against the rights of a purchaser for value opposed thereto.
3. Same—Excuse—Advice of Counsel—Incorrect advice of counsel that, if a party to a suit to recover land purchased the land at a judicial sale, he might lose all of it that was in

Woodward v. Johnson, &c.

possession of squatters by operation of the statute against champerty, constituted no excuse for his delay of nearly 30 years in the prosecution of such suit.

4. Champerty—Application—Judicial Sales—The statute relating to champerty does not operate on involuntary conveyances made by a party not in possession of land through a commissioner. of the court in pursuance of a judicial sale.

5. Abatement and Revival—Sale of Land Pending Litigation—An alienation of land in litigation does not abate the suit whether the alienation is voluntary or by judicial decree.

6. Adverse Possession—Extent—Color of Title—Where a purchaser of certain land entered into possession, his entry would be restricted, so far as the law construes it as adverse, to the boundary of the land to which he had some claim or color of title.

7. Same—Hostile Possession—Intent—Where an agent in possession of certain land surrendered the same to the sheriff to be sold on execution, the owners' subsequent possession was not adverse to the execution purchaser, in the absence of an intention to appropriate the land to their own use in spite of the conveyance by the sheriff so evidenced as to constitute notice to such purchasers.

8. Same—Conflicting Titles—Priority—Where boundaries of land interfere, an entry on any part of the boundary of the elder title by the owner extends to his whole boundary, unless some part of it be actually taken in possession by another, in which event his entry is restricted only by the actual occupancy of the hostile stranger.

9. Same—Constructive Possession—Since constructive possession of land accompanies the legal title only, it cannot be extended beyond the bounds of what actually belongs to the entrant, so as to include territory that did not belong to him.

10. Same—Where there was never any entry on a certain tract of land by the owners after it had been sold under execution, their possession and claim of other parts of the original boundary including such tract did not affect the right of the purchaser of the tract in question, nor start the statute of limitations in favor of such original owners against such execution purchaser.

W. C. HALBERT and W. B. PUGH for appellant.

POINTS MADE AND AUTHORITIES CITED IN BRIEF.

1. There being neither allegation or proof showing that the exe-

cution creditor, James Lowder, had notice of the pendency of the action of Hannah E. Seaton to enforce her equitable lien in the Greenup circuit court the purchaser of the land sold under execution of Lowder v. Harlan's and Pogue on March 21, 1864, the purchaser at the sale acquired the title of the Harlans then sold, although he may have known of the action himself. (Halley v. Oldham, 5 B. Mon., 235; Righter, &c., v. Forrester, &c., 1 Bush, 278; Low & Whitney v. Blinco, &c., 10 Bush, 334.)

2. The leases of all or portions of the 20,626 acres made by the Harlans prior to March 21, 1864, when the 500-acre tract in controversy was sold and purchased by Garrison, were not competent as evidence of adverse possession nor as color of title because appellant derived his title from the Harlans subsequent to these leases.

3. The 21 leases made of small portions of the Harlan land situated in Greenup County made in their name prior to March, 1873, allowed to be read as evidence of adverse possession were incompetent evidence of such fact, as the writings neither purported to lease any part of the land sued for nor was any entry made or possession taken of it by virtue of any of such 21 leases. And there was no authority shown in B. F. Bennett, who made the leases as agent for Harlan's heirs, to execute such leases.

4. The 12 leases made of small portions of the Harlan 20,626-acre tract, situated in Greenup county, subsequent to March, 1873, were also incompetent evidence of an adverse holding of the land sued for, as the leases did not include any portion of the land in controversy and no actual possession was ever taken of a foot of it by reason of such leases. There was no authority shown from the Harlans to B. F. Bennett, empowering him to act as their agent after 1873, for any purpose.

5. The possession, even if taken under any of the 33 leases of the demised premises, would have afforded no notice to Garrison or appellant that the Harlans were claiming the 500 acres in controversy.

6. And possession taken under any or all the 33 leases of the lands leased therein would not have given Garrison or Woodward a cause of action, as no entry was made on their land and no lease of it made. (Trimble v. Smith, &c., 4 Bibb, 257; Chenault v. Quisenberry, &c., 21 Ky. Law Rep., 1772; McKinney v. Kinney et al, 1 A. K. Mar., 460; Hunter v. Chrisman, &c., 6 B. Mon., 463; 1 Am. & Eng. Ency. of Law, 2nd Ed., 864-5; Clarke v. Courtney, 5 Peters, 354; Steedman v. Hilliard, 3 Rich., 101; Gourdin v. Davis, 45 Am. Dec., 745; 1 Am. & Eng. Ency. of Law, 2nd Ed., 345; Meacham on Agency, section 101.)

Woodward v. Johnson, &c.

7. The leases given in the name of the Harlans for the entire patent after 1873 by B. F. Bennett, as their alleged agent, were incompetent evidence of adverse possession, and should have been excluded from the jury, as no authority was shown from the Harlans to make such leases, and they clearly had neither an agent or attorney in charge of the land, or the litigation concerning it, after the sale of their Greenup land in 1873.

(a) And there is no proof whatever showing that any entry was made under or by virtue of such leases.

(b) And the mere lease unrecorded without an entry upon and possession taken of the 500-acre tract would not have given notice to Garrison or the appellant that any hostile claim was being asserted to their land and they certainly had no right of action until an entry was made on their lands by the lessees under these leases, which entry was never made.

The authorities last cited apply to these leases also.

8. It is universally held that the lis pendens of a suit may be lost by failure of the party entitled to its benefit to carry on a full or continuous prosecution without reasonable excuse for the intermission.

9. Unless the action is prosecuted with ordinary diligence under all the circumstances to final determination, the action will lose its effect as a lis pendens as to those persons who in the interval acquire the legal title without notice and for value. (21 Am. & Eng. Ency. of Law, 2nd Ed., 622; Ehrman v. Kendrick, 1 Met., 148; Petree & Bristow v. Bell, &c., 2 Bush, 58; Hawes, &c., v. Orr, &c., 10 Bush, 439.)

10. The delay of the lien claimant Hannah Seaton for more than 15 years to secure a report from the commissioner allowing or rejecting her claim was, under the circumstances, highly unreasonable, as there were no delays on account of war or death to prevent a speedy hearing of the issue.

11. And the delay of more than 12 years after 1873 and her lien had been declared valid and the amount ascertained to enforce it as against the Lewis county lands was negligence beyond any doubt and as a matter of law, there being no legal excuse for such delay. The reasons alleged for such delay were not ignorance of the facts, but merely of the law. (Saunder's Heirs v. Groves, 2 J. J. Mar., 409; Frizzle et al v. Veach, 1 Dana, 216; Little, &c., v. Breckinridge, &c., 86 Ky., 632; Arnold v. Stephens, &c., 13 Ky. Law Rep., 623; Carlisle v. Cassady, &c., 20 Ky. Law Rep., 562; Myer's Code, section 32; Cantrell v. Hewlett, c., 2 Bush, 314; Jackson v. Jeffries, 1 A. K. Mar., 90; Chiles v. Conley, 9 Dana, 385; Smith v. Price, 11 Ky. Law Rep., 895;

Hackworth v. Harlan's Heirs, 14 Ky. Law Rep., 78; Hardgree v. Mitchum, 51 Ala., 151; Evans v. Hughes County, 3 S. Dak., 244; 1 Bishop on Criminal Law, p. 168; 3 Greenleaf on Evidence, section 20; 85 Ky., 515; 25 Ky. Law Rep., 444.)

Numerous other cases also cited as to ignorance of the law.

THOMAS R. PHISTER for appellees.

### POINTS AND AUTHIRITIES.

#### EJECTMENT.

1. Amendment to pleadings allowed in sound discretion of circuit court.  (Lillard v. Whittaker, 3 Bibb, 92; Greer v. City of Covington, 83 Ky., 416; Civil Code, 134; City of Madisonville v. Pemberton's Admr., 25 Ky. Law Rep., 347.)

2. Lis pendens; evidence.  (Am. & Eng. Ency., Vol. 13, p. 887, 1st Ed.; Wickliffe v. Breckinridge, 1 Bush, 443; McConnel v. Brown, 5 Mon., 478; Preston v. Breckinridge, 86 Ky., 633; Hackworth v. Harlan's Heirs, 14 Ky. Law Rep., 76; Harlan v. Howard, 79 Ky., 377.

3. Evidence of possesion.  (Smith v. Morrow, 7 Monroe, 236; Bowman v. Bartlett, 3 A. K. Mar., 99; Powell v. Gossom, 18 B. M., 193.

4. The evidence was ample to sustain the verdict.  (Newell on Real Property, p. 797; Am. & Eng. Ency., Vol. 21, p. 596-647, 2nd Ed.)

OPINION BY JUDGE O'REAR—Reversing.

This action in ejectment was brought by appellant to recover the possession of a tract of 500 acres of land in Lewis county, hostilely held by appellees. The tract was within the grant to Thomas Keith for 20,626 acres, made in 1787, which now lies in Greenup and Lewis counties, mostly in Greenup. Kieth conveyed in 1794, to Joshua Harlan, of Philadelphia, but the deed was not recorded till 1851. Kieth having died shortly after he made the deed, his heirs at law in about 1845 conveyed the land to Samuel Seaton, who entered into the possession of the boundary and

made valuable and lasting improvements, including
an iron furnace. Samuel Seaton died testate in 1850,
devising all his property to his widow, who was also
executrix of his will. In 1852 the heirs of Joshua
Harlan brought suit in Greenup Circuit Court to
recover possession from Mrs. Seaton. About the
same time they brought a number of suits in eject-
ment against a number of settlers who had taken
possession of various parcels of the boundary. Mrs.
Seaton defended her suit on numerous grounds,
setting up her title, and in the alternative claimed a
lien on the land, in the event her title should be
adjudged insufficient, for lasting improvements made
by her testator, and for taxes paid by him and other
expenditures incurred in the belief that the land was
his, by reason of which it was alleged the value of the
land had been permanently enhanced to the amount
of about $40,000. The circuit court decided Seaton's
title to be in Seaton, and dismissed Harlan's petition.
On appeal that judgment was reversed. The title of
the Harlans was held good; but it was also held
by the court that Seatons had a lien for the value of
their improvements and taxes, etc., paid, to the extent
that the land had been permanently enhanced in
value, but subject to an accounting for rents and pro-
fits by the Seatons. The case was remanded for
reference to ascertain the state of that account. See
opinion in Harlan's Heirs v. Seaton's Heirs, 18 B.
Mon. 312. That opinion was delivered in 1857. The
case was remanded and the mandate filed, and a
reference to the commissioner was made in November,
1859, to ascertain the state of the claim for improve-
ments and an accounting for rents and profits. A
writ of possession in 1859 was issued placing the Har-

lan heirs in possession, but subject to the claim of
Seaton's heirs for improvements. No other definite
result was reached, and no steps taken till about 1872,
when the commissioner filed a report, which on
exceptions was reduced to a judgment in Seaton's
behalf in March, 1873, for the net sum of $15,818.55,
with interest from that date. The judgment decreed
Seatons a lien on the whole tract to secure the pay-
ment of the sum adjudged them, and the lands were
ordered sold to satisfy it. The judgment directed
the sale first of the lands in Greenup county, and
reserved the power to decree the sale of the remain-
der of the tract situated in Lewis county, if it should
be found necessary to sell it. The lands in Greenup
county were sold under the decree, and purchased by
appellee John Seaton for $4,000, and confirmed at the
September term, 1873, of the Greenup Circuit Court.
No further steps were taken in the litigation until
1885, when a decree was rendered, directing a sale
of the Lewis county land to discharge the balance
of judgment lien in favor of Seatons. This judgment
was executed in January, 1886, by a sale of the
remainder of the tract to appellee John Seaton. This
sale was also confirmed, but not till March, 1888, at
which time the court through its commissioner con-
veyed the whole tract by virtue of the purchases
above named to John Seaton. Seaton let in appellee
Johnson on the 500 acres in Lewis county now in dis-
pute by conveyance subsequent to 1888.

We will trace appellant's title. He purchased the
500 acres in dispute at sheriff's sales made under
certain executions duly issued against one Robert A.
Garrison, in 1875. The sheriff conveyed by deed to
appellant in 1876. Garrison had acquired title under

a sheriff's sale under execution issued on a judgment rendered by the Lewis Circuit Court against Harlan's heirs in 1863 in favor of James Lowder. At that time Harlan's heirs had an agent in possession, William L. Pogue, who surrendered to the sheriff, to be sold under the levy of the last-named execution, a particular boundary of 500 acres, the identical boundary now in dispute. It was sold to Garrison. as stated. A deed was executed to him in 1871, the Harlans having failed to redeem.

Thus it is seen that appellant and appellees all claim from a common source—the Joshua Harlan heirs. In point of time, appellant's title deeds are older than appellees.' The contentions of appellees are: (1) That their title, being derived through the lien adjudged against the land in 1857, is not governed by the date of the commissioner's conveyance to John Seaton, but by relation is carried back to the date of the decree adjudging that Seaton's executors had a lien; that the pendency of that suit created a lis pendens, and that appellant and his grantor, Garrison, having bought while the suit was pending, are bound, as if they were parties, by all decrees and orders made in it. (2) The statute of limitation is relied on to protect appellees against appellant's title, even if it be conceded to be the elder.

To create a lis pendens there must be a suit asserting a claim to or lien upon specific property, and it must be prosecuted with reasonable diligence. A lis pendens is good to protect parties to the suit against purchasers for value from one of the parties only so long as the suit is diligently prosecuted. Gross negligence in its prosecution, by which others have been suffered to acquire rights in its subject-matter,

is held to estop such party as against such purchasers
for value, to rely on his lis pendens.    Erhman v.
Kendrick, 1 Metc. 146; Watson v. Wilson, 2 Dana,
406, 26 Am. Dec. 459;Debell v. Foxworthy's Heirs,
9 B. Mon. 228; Clarkson v. Morgan's devisees, 6 B.
Mon. 447; Hawes v. Orr, 10 Bush, 439; Boyd v.
Emmons' Adm'r, 103 Ky. 401, 20 Ky. Law Rep.,
107, 45 S. W. 364; Gelley v. Culver's Adm'r,
116 Ky. 241, 25 Ky. Law Rep., 443, 75 S. W.
272.    The delays in the case at bar, without
excuse, cover nearly thirty years from the date when
Mrs. Seaton might have enforced her lien till it was
enforced against the Lewis county land.    Such laches,
as a matter of law, releases the property from the lis
pendens, where the rights of a purchaser for value
are opposed to it.    The trial court submitted to the
jury to find whether there was an unreasonable delay
in the prosecution of the suit by Seatons.    Perhaps
this was upon the idea that the pendency of the vari-
ous suits in ejectment begun by Harlan's heirs about
1852 against settlers, called "squatters," and which
had not been finally determined till after 1880, justi-
fied, or might in the opinion of the jury justify, the
delay in prosecuting the lien to an enforcement in
the Harlan-Seaton suit.    It is claimed by appellees
that this was so, because Seaton had been advised by
counsel that if he bought in the Harlan lands at
decretal sale he might lose all that was in possession
of the squatters by operation of the statute against
champerty.    Seaton therefore waited the determina-
tion of these suits before enforcing his judgment lien
in the Lewis court.    As a matter of law it is not true,
and has never been, in this State, that the champerty
statute operated upon involuntary conveyances made

by a party not in possession of land, but operating through a commissioner of the court. Halley v. Oldham, 5 B. Mon. 235, 41 Am. Dec. 262; Preston v. Breckinridge, 86 Ky. 619, 10 Ky. Law Rep., 2, 6 S. W. 641; Arnold v. Stephens, 17 S. W. 859, 13 Ky. Law Rep. 623; Carlisle v. Cassady, 46 S. W. 490, 20 Ky. Law Rep. 562; Righter v. Forrester, 1 Bush, 278.

Appellees argue that, although the law is as stated above concerning the statute against champerty, it was not a settled matter at all in this State until the decision in Preston v. Breckinridge, Supra (decided January, 1888). The law of champerty as adopted by the Legislature in 1824 (1 Stat. Law, p. 285) inhibited the conveyance of any land in adverse possession. This court in McConnell v. Brown, 5 T. B. Mon. 478, held that the act allowing lands to be sold under execution did not authorize the sale of lands claimed by the execution debtor, but held adversely by another, in view of the statute against champerty. Judge Mills dissented from the majority opinion. This case is relied on by appellees as showing at least a ground of doubt as to what the law was concerning official sales under execution or decree. But the opinion in that case at last rested upon the fact that the execution debtor had disposed of the land fraudulently to cheat his creditors, and it was held that it was still the debtor's land, and the sale was upheld. It was probably unnecessary, in view of that conclusion, to have decided the other matter at all. When the question did come squarely before the court for decision, as it did in Frizzle v. Veach, 1 Dana, 216, decided in 1833, it was held that the statute against champerty did not apply to sales under executions. It was similarly held as to sales

under decree of court in Saunder's Heirs v. Groves, 2 J. J. Marsh, 406; Little v. Bishop, 9 B. Mon. 247; Dubois v. Marshall, 3 Dana, 337; Halley v. Oldham, supra; and Righter v. Forrester, supra. In 1851 the Legislature adopted a revision of the statute laws of the State. In the chapter on champerty, sales under execution were expressly included in the inhibition of the statute. No reference was made, however, to decretal sales. The General Statutes, the revision of 1873, contain substantially the same provision as the Revised Statutes of 1852. Whether the statute against champerty applied to judicial sales was up for the first time after these revisions in Preston v. Breckinridge, supra, in which it was held that it did not. The distinction between execution and decretal sales as affected by this statute was pointed out, and the earlier decisions of this court and similar opinions of other courts cited, as showing that the statute did not apply to judicial sales.

Appellees contend, though, that until the last-named decision the question was a doubtful one, or at least an open one, and this fact was a justifiable reason for the delay in the prosecution of the lien to satisfaction. A kindred matter to that just discussed is the fear entertained by appellee Seaton, based upon the advice of counsel, he says, that if the sale of the Harlan title were enforced pending the ejectment suits against the squatters it woud result in an abatement of those suits, and as then more than the statutory period of limitation would have interposed in behalf of the squatters before Seaton could institute other suits to eject them (alowing that he would buy in the Harlan title) he refrained from executing the judgment of sale till the suits mentioned were finally

tried out in the name of Harlan's heirs. As has already been stated, the sale and conveyance of the Harlan title by decree would not have inured to any adverse holder of the lands. By section 20, Civil Code Prac., it is expressly reserved to assignees of the subject-matter of litigation to maintain the original action for their behalf, or to be made parties plaintiff and then continue the same action as if begun by them. Even before the Code, it was held in this State that an alienation of land in litigation did not abate the suit, whether the alienation was voluntary or by decree of court. Jackson v. Jeffries, 1 A. K. Marsh, 90; Chiles v. Conley's Heirs, 9 Dana, 385; Robertson v. Morgan, 2 Bibb, 148; Holmes v. Lindsey, 2 Bibb, 535.

But appellee contends that acting upon the advice of a reputable attorney at law was of itself a reasonable excuse for his not acting otherwise, although such advice was erroneous. Hindrances to the prosecution of an action that in fact delay it only are contemplated in the announcement of this exception to the rule being considered. The rule is that the prosecution of the action must be diligent and full. An exception to it is when the party has been delayed by matters not reasonably within his control. We are aware of no case, and would doubt the correctness of such, that holds that a suspicion or even belief of the existence of a difficulty would justify a delay otherwise unreasonable, even though the belief were not an unreasonable one. To allow that would be to make the whole matter most uncertain, and let it fluctuate, not according to any ascertainable standard, but subject to what might subsequently be developed as the belief of a party. This would abrogate the rule

altogether. Such mistaken ground of belief is of
itself an error, as the very term implies. It has been
held in other jurisdictions that such mistaken belief,
though induced by advice from a reputable attorney,
is not an excuse for laches. Breit v. Yeaton, 101 Ill.
242; Holden's Estate, 37 Wis. 98. Who should suffer
from such an error, he who committed it, or in whose
behalf it was committed, or another in no wise respon-
sible? We think it should be the former alone.

The next question presented is that of limitation.
The 500 acres were all uninclosed woodland. Garri-
son, after his purchase and before the sale by the
sheriff to Woodward, cut and sold some of the timber
from the land. But no actual possession was taken
of this particular tract and maintained, so as to
amount to an ouster of the rightful claimant, till that
of appellees Johnson, who went in just a short while
before this suit was begun. It is contended for appel-
lees, however, that they, and Harlan's heirs under
whom they claim, did have actual possession of the
whole 20,626 acres for more than 15 years before the
filing of the petition in this case, by virtue of their
entry upon and actual settlement within the boundary
and a concurrent claim of title and ownership to the
whole. As appellee Seaton had no title whatever to
the Lewis county land till 1888, he had not the right
of possession to it. Even though he entered into
possession of the portion of Greenup bought by him
in 1873, his entry would be restricted, so far as the
law construes it as a possession of the land so entered
upon, to the boundary to which he had some sort of
claim or color of title. McKinney v. McKinney, 1 A.
K. Marsh., 460; Hunter v. Chrisman, 6 B. Mon. 463.
This was the Greenup land only. The present action

was brought in 1901.   Therefore appellee Seaton's possession may be laid out of the case till we see whether there was an adverse possession by Harlan's heirs to which it could be coupled, so as to make up the full statutory period of 15 years.

Harlan's heirs entered into possession in 1859, under the writ of possession then awarded them in the Greenup Circuit Court.   They had an agent, Pogue, and subsequently Moore, who managed and looked after their lands for them.   It was Pogue who surrendered the tract in dispute to be sold in 1863, when Garrison bought it.   Harlan's possession after the execution sale was not hostile to that of his vendee, the execution purchaser.   To make it so, there must have been, not only such an entry upon the 500 acres as would amount to an ouster of the legal title holder, but under the circumstances stated the hostile intention to appropriate as their own in spite of the conveyance on their behalf by the sheriff must have been so evinced by the former owners as to bring notice home to the rightful owner of such intent. Paldi v. Paldi, 84 Mich. 346, 47 N. W. 510; Connor v. Bell, 152 Pa. 444, 25 Atl. 802; Hamilton v. Buchanan, 112 N. C. 463, 17 S. E. 159; Jackson v. Sternbergh, 1 Johns. Cas. (N. Y.) 153; Griffith v. Dicken, 1 Dana, 561; Snowden v. McKinney, 7 B. Mon. 258; Newell on Ejectment, 724.   The rule is, where boundaries to land interfere an entry upon any part of the boundary of the elder title by the owner is construed to extend to his whole boundary, unless some part of it be actually taken in the possession by another, and in that event his entry is restricted only by the actual occupancy of the hostile stranger.   Millar v. Humphrie, 2 A. G. Marsh, 446; Moss v. Currie, 1 Dana,

266; Harrison v. McDaniel, 2 Dana, 348. But, as constructive possession accompanies the legal title only, it could never be extended beyond the bounds of what actually belonged to the entrant, so as to include territory that did not belong to him. Trimble v. Smith, 4 Bibb, 257. As the Harlans had parted with the legal title to the 500 acres in dispute their subsequent entry within their original large boundary, but not within the 500 acres, would give them possession only of what their muniments of title properly embraced. As there was never any entry by the Harlans upon the 500 acres after the sale by the sheriff in 1863, their possession and claim upon other parts of the original boundary could not affect the right of the owner of the 500 acres to enter when he chose. There was no actual possession of the 500 acres at any time by the Harlans after the sheriff's sale in 1863; hence the statute of limitation was not set in motion for their benefit, or the benefit of their subsequent vendee, Seaton. It follows that the court should not have submitted the question of limitation to the jury, as there was no evidence upon which to rest it.

This leaves appellant with the elder and better title, with no defense proved, or evidence tending to prove it. The trial court, therefore, should have peremptorily instructed the jury to find for the plaintiff, appellant.

Judgment reversed, and cause remanded with directions to grant a new trial and for proceedings not inconsistent herewith.