Judge Ewing
delivered the Opinion of the Court.
On ^le 13 th of day of October, 1788, Joseph Lewis executed his bond, to Lewis Robards, in which he acknowledged, that said Robards was equally interested with him in upwards of thirty thousand acres of land warrants, that were in his name, and covenanted to convey to him the one half of the land acquired, by virtue of said warrants, after deducting the one half given to the locator.
In pursuance of this covenant Lewis, on the 2d day •of March, 1825, after the death of said Robards, conveyed to his heirs, the defendants in error, four thousand •acres—part of a tract of 9728, in Ohio county, acquired by virtue of a part of said warrants. Said deed was acknowledged before the clerk of the Nelson County Court, by said Lewis, and certified by him for record in the county of Ohio, and transmitted to an attorney of the county, to be lodged in the office for record. The attorney, from some information received, apprehending that there was some mistake in some of the calls, failed to lodge it for record, but held it up, with a view to have the supposed mistake corrected, until after the time for recording had expired.
On the 27th day of April, 1826, an execution of fieri facias was placed in the hands of the sheriff of Ohio county, in favor of Richard Morton, against said Lewis, founded on a decree of the Ohio Circuit Court, for two hundred and ten dollars damages, on the dissolution of an injunction, and costs, obtained at the October term, 1825; and said execution was levied on all the interest, right and title of said Joseph Lewis, in and to said tract of nine thousand seven hundred and twenty-eight acres, and the. same was sold, and Isaac Morton, the son of *259 said Richard, became the purchaser, at thirty-three dollars, and received the sheriff’s deed for the same, dated the 4th day of September, 1826.
The bill.
Reference to for-court°upo°n the effect of noqj^ £pon° the of ““ „nder execution; and now beid,. able title to land the legal title ac-chaser unde/ex-. ecution who had befor^hts. purchase; but his. purchase might,. perhaps, relate lacj^to the time even to the time-'y1’®1 a lien °*° the land accrued* by. force of theqq^cftToncerl ning conveyances relates to the-legal title only, leaving equities untouched.-!—Intakes from the.holder of an unrecorded.! deedhis legal priority, and leaves him without- any. advantage over the general creditor; huts tb.e omission, to .record the deed, does not. impair the grantee’s equity.. And—
Robard’s heirs had two tenants living on said land, claiming under them—one from November, 1822, the other from before the sheriff’s sale until after the said sale; and said Isaac Morton, who seems to have acted as agent for his father in the management of said execution, was advised, of said deed, gn the_ day; of] sale, before the land was sold, by the attorney who had it in his possession.
Robard’s heirs filed their bill in Chancery against said Morton, charging notice, and relying upon their superior equity, and praying that Morton might be compelled to yield up to them the legal title; and obtained a decree therefor, in the Circuit Court: from which Morton has, appealed to this Court.
There- has been some oscillation in the decisions of this Court; on the question involved in this record., In the case of Helm vs. Logan's heirs, 4 Bibb, 78, the Court decided, “that a purchaser under execution- is not “ affected by his notice of a mortgage, which was not. re- “ corded, and therefore void as.to creditors.”
In the case of Campbell &c. vs. Moseby, Lit. Sel. Cases, 358, a majority of the Court decided, that the equity of the holder of a bond for a conveyance, was paramount and superior to the title'of a purchaser under execution, with notice, and broadly asserted, the opinion, that the equity of the purchaser by unrecorded, deed, was superior to, and would prevail in a contest with the general creditor; or a subsequent purchaser under execution with notice.
And in the case of Graham vs. Samuel, [1 Dana, 166] a majoi'ity of the Court sustained the-principle,, settled in the case of Helm vs. Logan, and overruled the opinion expressed in the case of Campbell vs. Moseby.
Upon a full review of those- decisions, and comparison of them with the- English,decisions upon their regis *260 try acts, we are inclined to the opinion expressed in the case of Campbell and Moseby.
An unrecorded dence^^a^ur" ¿base for a vaintion, and^evidenceofanequieqúaUo^'bond for a title.
It seems to have been the intention of the Legislature, our a°t? to regulate the legal conveyance only, and to leave untouched the equity of the parties. The act concerns ^Rga^ conveyances only, and undertakes to rcgulate them, and provide the manner and mode of their con-summati°n> The title of the act is “an act to reduce into one the several j^cts or parts of acts for regulating conveyances;” and the language, of the. act is: ‘.‘That “ no estate of inheritance or freehold, or for a term of “ more than five years, in lands or tenements, shall be ‘‘ conveyed from one to another, unless the conveyance “ be declared by writing sealed and delivered, nor shall “ such conveyance be good against a purchaser for a valuable consideration, without notice, or any creditor, unless the same be acknowledged &c, within eight “ months, and lodged for record &c.”
The conveyance or legal title, may not be good, and yet the equity of the holder unimpeachable. The legal title under the above statute is not good, unless there be a seal to the deed, yet no one could doubt, that a deed without a seal would confer upon the holder a specific equity, which might be enforced in a Court of Chancery.
So a bond for a conveyance is not good as a legal title, yet valid as an equity. If it were the object of the Legislature to forfeit the equity, as well as the legal title, for the benefit of purchasers and creditors, it could not well have escaped their observation, that it was necessary to provide for the recording of secret bonds for a title, and for the forfeiture of the equity of the holder, in case of a failure: yet no provision is made with respect to bonds. We cannot conceive—whether we look at the language of the act, or the evil existing and intended to be remedied—that it was the object of the Legislature to affect the equity of the holder in the one case or the other. It would be strange to contend that, the equity of the holder of a bond is good, yet if he attempted to consummate his legal title, but failed, that he forfeits that equity, which he unquestionably would have held under his bond, in case no attempt had been made. We *261 therefore conclude, that the statute only takes from the holder of an unrecorded deed his legal priority, or annuls his legal advantage over the general creditor, but leaves him to contest with him his prior equity. And as a bond is evidence of a specific equity, so a deed, though it is made to lose its legal priority, by not being placed on the record in time, yet is evidence of a purchase for a valuable consideration: therefore evidence of an equity of as high a grade as a bond.
Reference to Erf glish decisions on their registry acts by which the above views ara sustained.
Held—contrary to a case ini JDd~. ?ia,that if when a creditor comes to enforce his judgment, bebas notice of an unrecorded deed, such notice may be sufficient to preserve the superiority of the equity evidence^ by the deed, though he had no notice of it when his debt was contracted.
In a contest between mere equities, the elder prevails. But if, to the junior equity, the legal, title, fairly acquired, without notice of the elder equity, be united, that will prevail against tag, elder equity.
Consistent with these views are the decisions of the English Courts upon their registry acts. Cruise's Digest, part iv. 375-6-7-8. Their acts, made applicable to certain parts Of the kingdom, are much stronger than ours, The deed is declared fraudulent and void as to subsequent purchasers, without any saving in case of notice.—? Cruise's Digest, part iv. 368-9-370.
In the case of Le Neve vs. Le Neve, 3 Atk. 646—Cruise's Digest, part iv. 378, Lord Hardwick uses the following language: “It was said that this act intended to establish a particular kind of notice, to-wit: by registering “ the conveyance. But this is only with regard to the legal estate, and the aot docs not take away the equity, “ of the prior incumbrancer, but leaves the question still “ open as to him.” Again he says: “I consider this re-. “ gistry act upon the same footing, as the 27th Hen. 8, “ and that it shall control only the legal estate.”
In the case of Lord Forbes vs. Denison, in the House of Lords, Cruise's Digest, part iv. 379, the court after referring to various decisions say: “All these authorities, “ show that the taking of a legal conveyance, after no-. “ tice of a former, is in itself a species of fraud, and, “takes away the bona fides of the subsequent incumbran- “ cer, and puts him in mala fide. For though he knew “ the first conveyance was not legal, yet he knew that “ the grantor’s conscience was bound by it; and this is “ within the definition of dolus malus by the civil law,”
But it is contended by the Court, in the case of Graham *262 vs. Samuel, that the notice, to deprive the creditor of the right to take advantage of an unrecorded deed, must be a notice at the time his debt is contracted, and no$ only, at the time when he comes to enforce his judgment. We cannot think so. If the prior incumbrancer is merely deprived of his legal advantage, and thrown back upon his equity, the prior equity must prevail, unless the junior equity be united with the legal title, acquired without notice of the prior equity.
A general credit- or has no lien npon the debtor’s lend till there is 5in ex’on in the officer’s hands; and then it operates only a¡jainst the vendor, andjunior executions, not against, d senior equity in' the hands of a stranger.
The levy of an ex’on upon land, may be withdrawn or never enforced: the title Í3 not complete until there is a sale and conveyance;#-whenthe legal title is thus acquired, with notice of a preexisting equity, thelegal title will be made to yield to that equity. But quere wbeth er the title would not relate back to the time when the ex’on lien accrued.
*262 By well established principles, in a contest between mere equities, the senior equity must prevail over the junior. But the junior equity coupled with the legal title, fairly acquired without notice, will prevail over the senior equity. And this is the only advantage which the general creditor may acquire under the recording statutes; namely, the privilege of arming himself with the legal title, and with all the legal as well as equitable advantages, which it may afford him in la contest with the prior equity. '
The general creditor has no right to the land sold, or any specific lien upon it at the time when his debt is contracted. He has neither jus in re, nor ad rem, nor any claim in law or equity to the land attempted to be sold under execution. He has no claim to the thing until he has placed his execution in the hands of an officer, and perhaps not until he has levied it. And this lien is, generally, only a lien operating against the vendor and other execution creditors, and not against an outstanding senior equity in. the hands of a stranger.
So, if air attachment in Chancery be levied on the property of a debtor, it will not overreach an outstanding equity in the hands of a stranger,
Besides, the levy of an execution creates a mere lien, which may never be enforced; and the legal title to the property is never completed until a sale and conveyance. And ia this case, as well as all other’s, the hgal title being •acquired with notice of a pre-existent equity, will be made to yield to.the prior equity, in a, Court of Chqncery.
It may be, that the legal title, when completed, may relate back to the commencement of the lien under the execution^ so as to overreach the prior eqqity, and pro-. *263 teet the creditor who had no notice of it, at the lime of its commencement.
The statute that makes unrecorded conveyances void as to creditors, gives the ere ditor no specific lien on any estate of the debtor; nor does it give to the debt any higher dignity than it had before; it merely destroys the effect of the unrecorded deed, and enables the creditor to gain the advantage, {supra) that the legal title would afford him in a contest with the prior incumbrancer,
A third party pur chasing the estate atasheriff’ssale, unites the legal title with the creditor’s equity, & is placed on the same ground that a creditor would occupy were he the purchaser.
But this is not necessary to be determined in this case, as the creditor had notice before that time.
It is said, that, when a judgment creditor buys in a first mortgage, he cannot tack or unite this to his judgment, so as to gain a preference thereby, over a mesne mortgagee, because such creditor cannot be called a purchaser, nor hath he any right to the land. Powell on Mortgages, 526—7.
Much less could he, before judgment, be said to have any claim or lien upon the land, and therefore, could not be said to be defrauded by a bona fide sale of the land, as a subsequent purchaser or mortgagee would be by a pri- or secret conveyance.
Though our statute postpones or annuls the legal title acquired by an unrecorded deed, in favor of creditors, it gives to the creditor’s demands no higher dignity or greater efficacy than they had before. It neither gives, nor was intended to give, to the creditor, any lien or equity upon the property of the debtor, which he had not by the terms of his contract. The statute could not, therefore, in the language of the Court, in the case of Graham vs. Samuel, be said to “palter” with him, and “cheat him with the mere word of promise.” No promise is made to him, that he shall have a lien, equitable or legal, on the specific property embraced in an unrecorded deed. Or that he shall have the privilege of making his debt out of land thus conditioned. This would be - to promise him, what he had not secured by his own contract, and what the Legislature would, perhaps have no constitutional power to afford. But the statute has promised him, to sweep away the legal obstruction which the holder of an unrecorded deed has placed in his wray, and to enable him to gain the vantage ground which the legal title would afford him, in a contest with the prior incumbrancer. And this promise is redeemed by the construction which we have given to the act.
If a third party become the purchaser at the sheriff’s sale, and receives the conveyance, he is armed with the *264 legal title, united to all the equity which the creditor* possessed, and occupies precisely the condition of the creditor, in case he had purchased, and no better or worse.
Notorious posses sion by a party holding an equity is sufficient to put a purchaser upon enquiry, and operates as notice to him of tho equity.
But independent of these general views upon the statute in the case under consideration, the proof is satisfactory, that the complainants, by their tenants, had actual possession of the land in contest, before the creditor’s demand accrued, and the possession was continued until after tho sale under execution. And the complainant’s equitable claim, by bond, as well as by deed, was prior in time, to the origin of the creditor’s demand. And by the notorious possession of the complainants, the creditor, and all the world were put upon inquiry as to the nature and extent and character of their claim. We could not, therefore, within the'principle settled in the case of Graham and Samuel, refuse the relief asked in this case.
It is, therefore, considered by the Court, that the decree of the Circuit Court be affirmed.