## Halley *vs* Oldham, &c,

ERROR TO THE MADISON CIRCUIT.

*Sale of land under execution. Trustees and trusts.*

CHANCERY.

*Case* 56.

| 5bm233 |
| 122 169 |
| 122 170 |

JUDGE MARSHALL delivered the opinion of the Court.—Judge Breck did not sit.

*Oct.* 19.

THIS case presents, for the first time in this Court, the direct question whether a purchaser of land under an execution sale, who has purchased when neither he nor the creditor had notice of a prior executory contract between the debtor and another, for the sale of the same land, is

The case stated.

HALLEY
vs
OLDHAM, &c.

to lose his purchase by having notice before he has received a deed from the Sheriff, but after he has either paid the money or executed such bond for it, as having by law the force of a judgment, extinguishes the original debt and gives to the creditor a direct remedy, by execution, against him and his surety.

The cases of *Helm* vs *Logan's heirs*, (4 *Bibb*, 78;) *Graham* vs *Samuel*, (1 *Dana*, 166,) *Campbell* vs *Mosely*, (*Litt. Sel. Cases*, 358;) *Chinn* vs *Butler* (3 *Dana*, 547;) *Morton* vs *Roberts*, (4 *Dana*, 258,) taken together, establish the principle, that if an execution purchaser have notice before his purchase, that the title subsequently acquired is held in equity, subject to the claim of the prior incumbrancer.

In the case of *Helm* vs *Logan's heirs*, (4 *Bibb*, 78,) it was decided that the purchaser of a slave under execution, was not affected by notice even before his purchase, of a mortgage of the same slave, which being unrecorded, was deemed void as to creditors, and therefore, as to the purchase under the creditor's execution. The case of *Graham* vs *Samuel*, (1 *Dana*, 166,) sustains virtually, the same principle as applicable to a sale of land under execution. But the case of *Campbell* vs *Moseby*, (*Litt. Select Cases*, 358,) decided before that of *Graham* vs *Samuel*, and the case of *Chinn* vs *Butler*, (3 *Dana*, 547,) and that of *Morton* vs *Roberts*, (4 *Dana*, 258,) decided since, establish the principle that if the execution purchaser have notice before his purchase, the title subsequently acquired by him is held in equity, subject to the claim of the prior incumbrancer. In the cases of *Campbell* vs *Moseby* and *Morton* vs *Roberts*, the execution purchaser seems to be treated, in the reasoning of the Court, as an ordinary purchaser, liable to be affected by notice, at any time before he actually receives a deed conveying the title. But in this respect the argument goes beyond the facts of the case, and is, therefore, not to be regarded as a judicial decision of the question. And in the case of *Morton* vs *Roberts*, the Court expressly waives a decision of the question, whether the legal title, when completed, may not relate back to the commencement of the lien under the execution, so as to overreach the prior equity, and protect the creditor who had no notice of it at the time of its commencement.

These discrepancies have arisen in giving effect to the statutes subjecting land to the payment of debts, and to the declaration in our statutes of conveyancing, that no estate in land, for a longer term than five years, shall pass, except by deed, and that such deed shall not be good against a purchaser without notice, nor any creditor, unless

proved or acknowledged and recorded, as required by law. The two cases just noticed, decide, in effect, that the distinction made in favor of the creditor, on the subject of notice, however it may operate with regard to the transfer of the legal estate, is entitled to no weight in determining between the equities which will control and bind that estate; and that although the statutes seem to say, in favor of the creditor, that the legal estate remains in the debtor, and may be subjected to the satisfaction of the creditor's demand, though there be an unrecorded deed of which he has notice, transferring the title to another, yet a Court of Equity, considering that by notice of such unrecorded deed, or even of a bond for a deed, the conscience of the purchaser is affected, and undertaking to correct his unconscientious proceeding, will deprive him of the fruits of his purchase, and coerce a conveyance which shall transfer the legal estate in obedience to the equity evidenced by the bond or unrecorded deed. If the creditor is himself the unconscientious purchaser, he of course loses by the operation of this principle, the satisfaction of his demand, which he had apparently obtained by subjecting under the sanction of the statute, the legal estate to sale under his execution. But suppose the creditor remaining wholly ignorant of the prior equity, has received his debt from a purchaser who had notice at the time of his purchase, or, which is a stronger case, from one who, without having had notice at the time of the purchase, or even at the time of his paying the purchase money, has it before he receives a deed, how is the Chancellor, under these circumstances, to dispose of the case? Is the creditor, who has acted throughout with good faith, to be deprived of his money or other satisfaction, and remitted to his remedy by execution against an insolvent, on account of the bad faith of the purchaser in the first case, or on account of notice communicated to the purchaser in the other cases, after he has satisfied the judgment by payment or by a statutory bond? Could the purchaser, in either of the supposed cases, either recover the purchase money back from the creditor, or enjoin him from coercing the bond? And if in the first case, he may, on the ground of bad faith in entering upon the purchase, be

compelled to relinquish it and look to the original debtor for his indemnity, can he be equitably subjected to these conditions, which may involve an absolute loss of what he has paid, or is bound to pay, because although he has come in aid of the legal remedy for the coercion of the debt with a good conscience, and discharged or assumed the responsibilities of a purchaser by paying the purchase money or becoming bound for it as required by law, he is informed or accidentally learns before he receives a conveyance, that there was a secret equity affecting the land, in the hands of the debtor, before he became thus involved in the character of a purchaser? It is surely worthy of some consideration, that a sale under execution is not, like an ordinary sale, a private transaction, brought about and regulated by the will of the parties;. but is a public transaction, appointed and regulated by law, as a means of enforcing a judgment, and of which the terms and consequences are fixed by statute. And when by the act of the public officer, under legal process, land apparently subject to the execution, is thus offered for sale, after levy and advertisement, may not the persons who, in accordance with the policy of the law, are brought to. gether to bid for the land, and to satisfy the judgment by buying it, place some confidence in these circumstances as constituting a protection against secret and hidden claims, which they have no means of discovering? Is not the holder of such a claim under some obligation not to permit innocent persons to be implicated in the difficulty which a want of notice may produce? And is he not to be affected by the publicity of the whole proceeding, from the commencement of the suit, and by the sanction which the law gives to it? In fine, may he, while such proceedings are going on, and innocent persons are becoming involved, repose in silence and security upon an executory contract, whether he has yet paid any thing on it or not, with the privilege of relying upon the effect of a subsequent notice to the execution purchaser as giv. ing him the right of completing his own contract at pleasure, and coercing a conveyance to himself, because, be. fore the purchaser had, in pursuance of the terms of sale,

paid the purchase or received a deed, he became apprised of the pre-existing contract?

It is not necessary, in the present case, to answer these enquiries, which, however, seem to concur in indicating the equitable conclusion to be, that where the creditor has acted throughout in good faith, and the purchaser has, without any knowledge of a prior equity, paid the money or become bound to do so according to the lawful conditions of the sale, his right as a purchaser should not be affected by subsequent notice. It may be that a purchaser coming in with a knowledge of the prior equity, should not, on account of his personal bad faith, be protected by the right or equity of the innocent creditor, but should be subject to any loss which may follow from his own unconscientious act. But it can hardly be deemed unconscientious for one who has become fixed as a purchaser, while he had no notice, to go on, after he has received notice, either to obtain a deed from the Sheriff, if he has already paid the money, or to make payment and obtain the deed, if he has not paid before notice. The sale itself being fair and valid, it is the policy of the law that it should have its full effect, not only in satisfying the judgment, but also in securing to the purchaser the fruits of his purchase; and a Court of Equity should not interfere to frustrate this policy, but upon the clearest grounds.

It is true, that in case of ordinary purchases, a second purcheser is held bound by the prior equity, though he may have made his contract and fully paid the purchase before he has notice of it, provided he has such notice before his own equity is clothed with the legal title. But passing by the obvious consideration, that in case of private purchases the second contract is commonly as secret as the first, and there is therefore no particular call, or occasion for the first purchaser to make his claim known; it seems to us that the application to cases of execution sales, of the doctrine just referred to, would tend to produce confusion and uncertainty in titles derived under such sales, would diminish confidence in them with the general consequence of sacrificing the property sold, and would impair seriously the efficacy of the remedy which

It is a general rule, that a purchaser, though he pays his money, is affected by notice of an outstanding equity, received at any time before he is clothed with the legal title.

HALLEY
vs
OLDHAM, &c.

the law intends to give to the creditor, by execution against the land of his debtor.

The statute of 1792, subjecting land to the payment of debts, (1 *Littell's Laws*, 120,) declares that every writ of *fieri facias* shall bind the property of the lands, tenements and hereditaments (of the debtor) from the time it shall be delivered to the officer. In obedience to this declaration, and as being necessary to give effect to the lien which it secures to the execution, it has been uniformly held that the subsequent levy, sale and conveyance of the land, relate back so as to overreach any conveyance made by the debtor after the execution came to the officer's hands, though made to the holder of the prior equity, *Million* vs *Reiley*, (1 *Dana*, 359;) *Butts* vs *Chinn*, (4 *J. J. Mar.*, 641;) *Chinn* vs *Butts*, (3 *Dana*, 547;) *Addison* vs *Crow, &c.* (5 *Dana*, 271.) The cases of *Million* vs *Reiley*, and *Butts* vs *Chinn*, were questions by the execution purchaser in each case against the holder of the prior equity, who had obtained the prior deed from the debtor, dated in the first case before the levy of the execution, but after it came to the officer's hands, and in the second case, after the levy. In the first case, it was virtually decided, that by the effect of this relation, the execution purchaser, though his deed was the youngest, had the elder legal title. And in the other case, the Court expressly said, '' the deed of the appellant is prior in date to that of the appellee ; but the latter took effect, and vested the legal title, by relation, from the date of the levy.'' The inadvertent reference in this case, to the date of the levy, instead of the delivery of the execution, as the time at which the title vested, by relation, is corrected when the case came up in equity between the same parties, *Chinn* vs *Butts*, (3 *Dana*, 547,) and the cases must be regarded as concurring on this point.

The effect of this doctrine is, that in case of a levy, sale and conveyance, these acts connect themselves with the delivery of the execution to the officer, so as to form one single transaction, which, so far as regards the passage of the title from the defendant, takes date from the first act which gives the lien. And it seems to us to be an allowable, and therefore in view of the inconvenien-

The title of a purchaser under execution sale of land, relates back to the time of the receipt of the execution by the Sheriff—and his right upon

cies which have been adverted to, a proper consequence, that the purchaser who with a clear conscience, acquires an interest, and identifies himself with the transaction, by being received as purchaser, and satisfying the judgment, which is the great object of the whole proceeding, and especially of the lien, is entitled to the full benefit of the relation which carries back his title, when consummated, to the commencement of the lien. And that when the transaction is regularly closed by the Sheriff's deed, his title takes that date in a Court of Equity, as well as in a Court of Law. And as we do not admit that the interest which he acquires as purchaser, before obtaining a deed, is a mere equity, for a mere equity would not carry back the title by relation, in a Court of Law, so we do not admit, that while he has that interest only, the Chancellor can treat him as the mere holder of the junior equity, subject as such, to be affected by notice of a prior equity. We are disposed to regard him as having by his purchase, not only an equity, but an inchoate legal title. He has the full benefit of a lien which binds the land at law, if perfected by a conveyance from the Sheriff, and having accomplished the object of the law and of the execution, in satisfying the judgment, he cannot afterwards be disturbed in his legal rights by notice of a prior equity. It is said that the law subjecting land to the payment of debts, authorizes a conveyance only of such title as the debtor has, and may lawfully part with, and that having previously parted with the equity, it cannot pass to the purchaser. But the statute authorizes a conveyance of all the estate and interest which the debtor has and may lawfully part with. If the legal title be in him, it is subjected to sale and conveyance; and in this case, as in that of a private sale, the legal title is all the grantee wants in order to secure the plenary beneficial enjoyment of the estate, unless he takes it under circumstances which subject him to an outstanding equity. In view of the statute, the land belongs to the person holding the legal title, and is subject to the payment of his debts. It is not the statute, but the Court of Equity, which withdraws it from this subjection, to answer to a prior equity. And we decide that such prior equity, if kept secret until af-

HALLEY
vs
OLDHAM, &c.

the purchase and payment of the price, or giving a bond, is not a mere equity, such as will then be affected by notice then received of a prior sale to a private purchaser, but is an inchoate legal title.

The sale of land under execution passes the legal estate to the purchaser, though the equitable title may have been parted with by defendant in execution.

ter the execution sale is complete in its principal objects of paying or securing the judgment, cannot be then brought forward with the effect of intercepting the purchaser's title, or wresting it from him. The statute says the Sheriffs shall convey, &c., and the deed shall be effectual to pass to the purchaser all the estate and interest which the debtor had, (that is, at the time of the sale,) and might lawfully part with. It thus fixes the rights of the purchaser as they existed at the time of the sale, and the mere discovery that there had been a prior equity, cannot preclude him from going on to consummate them.

Wherefore, without referring to any special circumstances which might affect the equity relied on by the complainant, the decree dismissing his bill, is affirmed.

*Turner and Goodloe* for plaintiff: *Caperton* for def'ts.