# Vanmeter *vs* McFaddin and others

### Error to the Warren Circuit.

*Liens.   Mortgages.   Notice.   Choses in Action.*

Judge Simpson delivered the opinion of the Court.

On the 11th of May, 1843, Elrod executed a bond to John H. McFaddin, for the conveyance of a tract of land in two parcels, on or before the 25th day of the following December.   On the 15th of May, 1843, John H. McFaddin assigned the bond to Samuel McFaddin, who, on the 6th day of September, 1843, assigned it to Jacob Vanmeter, who afterwards, in September, 1844, assigned it to his son, William S. Vanmeter.

*Elrod gave his bond for land to, J. H. McFaddin, which he assign-ed to Samuel McFaddin, and which he assign-ed to Jacob Van-meter, who as-signed it to W. S. Vanmeter.*

On the 15th day of August, 1844, Samuel McFaddin, after he had assigned the bond to Jacob Vanmeter, exe-cuted a deed of mortgage to John M. Briggs and others, conveying to them a part of the same land, for the pur-pose of indemnifying them as his sureties in a note paya-ble at the Bowlinggreen Branch of the Bank of Ken-tucky, which mortgage was duly recorded.

*J. M. Briggs and others take a mortgage from S. McFaddin for a part of the same land.*

The assignment of the bond by Samuel McFaddin to Jacob Vanmeter, although absolute in its terms, was only in trust, as the parties to the assignment admit; but the object and extent of that trust, is a matter of controversy between them.   According to the state-ment of McFaddin, Vanmeter was to hold it alone to secure him on account of his liability on two bills of exchange as his surety; whilst Vanmeter contends that he had a right, by contracts and arrangements between himself and McFaddn, to hold it as a general indemni-ty against all liabilities as surety, and also to secure him in the payment of all debts which McFaddin owed him, or might subsequently contract with him, although the assignment when made, had reference only to his liability on the two bills of exchange.

*The assignment to J. Vanmeter, admitted to be in, trust, and claim-ed to be for gen-eral indemnity, though in terms absolute;   but claimed by Sam. McFaddin to be. for a special in-demnity, i. e. to, indemnify Jacob Vanmeter as in-dorser of two billsofexchange.*

The bills of exchange for which Vanmeter was liable on McFadden's account, were paid off by McFaddin.

*The bills of ex-change paid off; but J. Vanmeter's*

VANMETER
vs
McFADDIN et al.

demands against
S. McFaddin a-
mount to more
than the land not
mortgaged.

Vanmeter's demands against McFaddin, which were assigned to his son, William S. Vanmeter, at the time the bond on Elrod was assigned to him, amount to a sum considerably beyond the value of the land left out of the mortgage.

Much the larger portion of McFaddin's indebtedness to Vanmeter, originated after the assignment of Elrod's bond to him; and all of it accrued before the mortgage was executed by McFaddin to Briggs and others, at which time McFaddin was insolvent. The mortgagees had notice before the execution of the mortgage, that Elrod's bond had been assigned to Vanmeter; but may have been mis-informed by McFaddin of the extent of the lien claimed by Vanmeter under the assignment, or may have taken the mortgage, influenced by the belief that it would hold the land, notwithstanding the bond on Elrod had been assigned, inasmuch as the parties to the assignment intended it to operate as a mortgage merely, although in its terms it was absolute.

W. S. Vanmeter
sued Elrod on
the bond at law.

Elrod filed his
bill against the
Vanmeters and
Briggs, &c. re-
quiring them to
interplead, &c.

William S. Vanmeter, the holder by assignment, of the bond on Elrod, instituted an action at law against him for failing to make a deed of conveyance according to the stipulations in his bond. Elrod then filed his bill in chancery, admitting the payment of the whole of the purchase money by McFaddin, alledging his ability, and willingness to make a deed of conveyance to the persons entitled to demand it, and assigning as a reason for his failure to make it to Vanmeter, that he had been notified by the mortgagees that they claimed part of the land by virtue of the mortgage made to them by McFaddin; that the object of the assignment of the bond to Vanmeter had been fulfilled, and he had therefore no interest whatever in the land embraced by the bond, but that it belonged to the mortgagees, for their indemnity as the sureties of McFaddin. He made all the claimants defendants to his bill, required them to exhibit their respective titles or claims to the land in controversy, and prayed the Court to determine to whom he should make a conveyance of the legal title; and in the mean time restrain the defendant, Vanmeter, from proceeding against him further in his suit at law.

The answers of the defendants exhibit substantially the foregoing facts. The controversy is mainly between Vanmeter, as the assignee of the bond on Elrod, and the mortgagees of McFaddin.

The extent of the claim of the holder of the bond, under the absolute assignment to him, forms the first subject of inquiry.

Upon the strength of the doctrine established by English adjudications, that a deposit of title papers, creates an equitable mortgage on real estate in favor of the person to whom the deposit is made, it is contended a lien arises in this case for the benefit of Vanmeter, sufficiently comprehensive to embrace all his demands against McFaddin, and secure their payment out of the land contained in the bond.

This doctrine of implied lien, founded on a deposit of title deeds to an estate, made by a debtor to a creditor, as security for an antecedent debt, or upon a loan of money, although firmly established in England, has, as remarked by Judge Story in his Commentaries on Equity Jurisprudence, (vol. 2, Sec. 1020,) of late years been received even there, with considerable hesitation and disapprobation, and a disposition has been strongly evinced, not to enlarge its operation.

The doctrine of equitable mortgages, founded on deposit of title deeds for an antecedent debt, or loan of money though well established in England, not sanctioned by this Court, but suggested to be in conflict with the provisions of the statute of frauds, and difficult to maintain.

We are strongly inclined to the opinion that the mere deposit of title deeds, should not be regarded, in this State, as constituting any lien upon real estate. If permitted to have this effect, an interest in landed property is created by the contract of the parties, not reduced to writing, in direct violation of the statute of frauds. The doctrine, no doubt, had its origin in England in the fact, that the possession of title deeds was necessary to the assertion of right to real estate, and the debtor having made a deposit of his evidences of title with his creditor, as a security, could not regain, by an action at law, the possession of them, until he had paid the money, to secure which, they were pledged. If he made application to a Court of equity for relief, he came under the operation of the equitable rule, that he that asks equity must do equity; and consequently, was compelled to repay the money, in consid-

VANMETER
vs
McFADDIN et al.

eration of which, the deeds had been pledged, before he could obtain a decree for their restitution. Under our registry laws, however, the mere possession of title deeds, is of no real importance to the owner of the estate; he can procure office copies and use them, without accounting for the absence of the original deeds; and that necessity which gave rise to this doctrine of implied or equitable lien having no existance here, the doctrine itself would be difficult to be maintained, either upon the ground of principle or of public policy.

The assignment of the bond passed the entire legal property therein to Vanmeter.

But the equity of Vanmeter to have the land applied to the payment of his demands against McFaddin, does not depend upon this doctrine, and it is, therefore, unnecessary, on this occasion, to decide this question. The bond on Elrod was, in its nature, assignable. By the assignment the legal right to the bond passed to the assignee, and not a mere equity arising from its possession. The only interest left in the assignor, was an equity of redemption, growing out of the character of the transaction.

Where a deed is absolute on its face, or a bond for land is assigned absolutely, but admitted to be a surety for money only, parol evidence is admissible to show the extent, nature, &c. of the lien of the holder; but it should be clear and satisfactory, if in contradiction to the terms of the writings.

The attitude of the assignor in this instance, is precisely similar to that of the bargainer, where an absolute deed of conveyance of the legal title is made, the parties intending it to operate merely as a mortgage. The same rules of evidence are applicable in both cases, to show that the instrument, although absolute on its face, was only intended to have the effect of a mortgage. In each case, an admission by the creditor, that the object contemplated, was not an absolute translation of title, but only the creation of a security, would avoid the rigid rules of evidence applicable in such cases, and permit the introduction of oral testimony to evince the true nature and extent of the creditor's lien.

Although the admission of this fact by the creditor, renders oral testimony competent to explain the dealings between the parties, still however, evidence of the most satisfactory character is requisite, to entitle the debtor to any greater relief, in opposition to the actual terms of the written instrument, than the admission itself authorizes.

The attitude in which the parties have to present themselves before the Chancellor, as well as the absolute and unconditional terms of the assignment, calls for the application of this principle. The assignee of the bond asks for no relief. Being invested with the legal title and the right of action in the bond on Elrod, he sought his remedy by action at law. He has not appealed to the Chancellor, nor does his situation as the holder of the bond, require he should do so, unless he desired a specific execution of the contract by Elrod. Even then he could have proceeded in equity for that purpose, without having made either his assignor or the mortgagees parties, inasmuch as the assignment itself does not manifest any interest on their part in the land contained in the bond. The equity of the assignor being a latent one, and the mortgagees occupying his attitude, are constrained, by the nature of their claim, to assert it against Vanmeter as assignee of the bond, in opposition to the terms of the assignment, whereby he is placed in the position of defendant, resisting a claim, which they have to establish satisfactorily, before they can demand the aid of the Chancellor to enforce it. It is true, there is no cross pleadings in this case, between the defendants, although the object of the suit on the part of the complainant, was that they should interplead and have their respective claims to the land sold by him, adjudicated upon by the Court. This defect, however, passed unnoticed in the Court below, and not having been adverted to here, either in the assignment of errors or in the argument, we shall decide the case as if the parties had presented their claims by appropriate pleadings, and the mortgagees had filed their cross bill against Vanmeter, asserting their equity to the land.

As the extent of Vanmeter's lien on the land under the assignment, has to be determined by the testimony in the cause, it becomes necessary to decide upon the competency of Samuel McFadden and Jacob Vanmeter as witnesses, their depositions having been taken and exceptions filed to them, by the parties respectively.

McFadden is clearly a competent witness. His pecuniary interest does not preponderate in favor of either

VANMETER
vs
McFADDIN et al.

The mortgagee of an equity occupies no better attitude than the mortgagor.

A party who has equal interest on both sides, is a competent witness.

A father who assigned a mortgage to his son in consideration of natural affection, and who intended to charge it as an advancement if realized, is competent witness to sustain the mortgage as being under no legal liability.

of the parties. The proceeds of the sale of the land have to be applied to the payment of his debts; and the question of priority among the claimants, cannot affect his interest.

Vanmeter's attitude renders his competency more questionable. He has assigned the bond on Elrod and the debts on McFaddin, to his son, without any consideration. If the debts are made, he intends, as he states, to charge the amount to his son as an advancement, but if they are not collected no such charge will be made by him. By the assignment, however, the claim has been vested in the son, and the father has no legal interest in it. The failure to collect the debts imposes no legal or enforcible obligation on the assignor, and although under such circumstances, the father may intend to make up the loss to the son, yet such intention not growing out of any legal obligation on him, is insufficient to exclude him as a witness. His attitude should, however, materially diminish his credibility, unless his evidence be sustained by the probabilities of the transaction, or other corroborating testimony.

Suppose this assignment had not been made, and the father had still retained the bond on Elrod, and the debts on McFaddin, and his answer as a defendant was alone relied upon, without his testimony, the mortgagees would then be required, before they could obtain a more favorable decree than Vanmeter's admissions would justify, to manifest their right to it, by proof at least sufficient to overturn the statements in his answer. He admits their right to redeem upon the payment of the whole amount due to him by McFaddin, but upon no other terms or conditions; the assignment being absolute, proves nothing in their favor, and the only evidence adduced by them, is the deposition of McFaddin. This in the absence of all other testimony, would not have the effect of overturning the answer of Vanmeter, or authorizing a decree in opposition to its allegations. But the other evidence in the cause, substantially sustains the statement made by Vanmeter, and indeed the circumstances of the transaction tend very forcibly to a similar conclusion. When McFaddin's situation had

become evidently precarious, he still applied for, and obtained means from Vanmeter. The application by the one, and the means furnished by the other, create a strong presumption of a mutual understanding, that the bond on Elrod was held by Vanmeter as a general security for all his demands against McFaddin. We think, therefore, the evidence of Vanmeter is fully sustained by the other testimony in the cause, and all the circumstances developed by the proof, and the right of the assignee to hold the land contained in the bond, until the whole amount of debt due to him by McFadden be discharged, is clearly manifested.

Other equitable considerations arising out of the facts of this case, also lead to the same conclusion. When McFaddin executed the mortgage to Briggs and others, he was insolvent. Had he then applied to the Chancellor for relief, he would not have been allowed to redeem, except upon equitable terms. He would have been required to pay the full amount of his indebtedness to Vanmeter. The mortgagees occupy his position, and are entitled only to the same measure of redress. Admitting the claims of the parties to be equally meritorious, still as Vanmeter is the legal proprietor of the title bond, he has an advantage which equity will not deprive him of, and which secures the payment of his demands out of the land contained in the bond in his possession, because of his equality in equity, and advantage in law. But in reality his equity is prior in time, to that of the mortgagees, independent of any agreement, that the land should be liable as a security for the payment of the debts due to him; the debtor being insolvent, and the debts having been all contracted previous to the execution of the mortgage.

An objection is raised to the validity of Vanmeter's claim, on the ground that the assignment of the bond being intended to operate merely as a mortgage, should have been recorded; which not having been done, the omission as argued, should cause its postponement to the claim of Briggs and others, whose mortgage, although on an equitable title only, has been regularly recorded.

One having no-
tice of a mort-
gage is bound by
it whether it be
recorded or not
recorded.

The mortgagees, however, had notice of the assign-ment of the bond to Vanmeter before the execution of the mortgage. We think the evidence also justifies the conclusion, that they were apprised of the extent of his claim. But if they were not, it was their duty, know-ing he held the bond on Elrod, to have ascertained from him by enquiry, the nature and extent of his claim under the assignment. Having had notice of Vanmeter's claim when they acquired their own, they cannot, in equity, resist it on the ground assumed, even were it ne-cessary, under the act of 1837, to have had the writing recorded: *Morton* vs *Roberts*, (4 *Dana*, 258;) *Stewart & Co.* vs *Hall*, (3 *B. Monroe*, 218;) *Bailey and Carter* vs *Welch*, (4 *B. Monroe*, 244.)

The statute of 1839, providing that mortgages shall not take effect, except between the parties, until the same shall be acknowledged or proved and deposited in the clerk's office for record, does not change the law in regard to the effect of notice, as was held by this Court in the case of the *Bank of the United States et al.* vs *Huth*, (4 *B. Monroe*, 451;)

The statute of
1837 never has
been considered
to require the re-
cording of mort-
gages of choses
in action or the
legal right to
debts transfer-
ed.

It is also decided in the same case, that the act of 1837, requiring mortgages of equitable interests to be recorded, cannot be understood as applying to a chose in action or legal right to a debt transferred in mort-gage. As then the bond on Elrod is assignable by law, and the transfer was absolute and passed the legal title in the bond to the assignee, without being recorded, and as the bond and the assignment do not indicate the agreement of the parties that it was to be held merely in pledge, and as the law does not authorize such a writing to be recorded, and if recorded, it would not give notice of the object of the assignment, and the writing was in possession of the assignee, the conclu-sion seems to be inevitable, that recording cannot be ne-cessary to its validity, or required by the statute.

Our conclusion, therefore is, that Vanmeter has a lien on the land to the whole extent of his demands on McFaddin. And as this lien existed before the execu-tion of the mortgage, with notice on the part of the mortgagees, it has, in equity, a preference over their

.claim under the mortgage. The Court below having, to a considerable extent, postponed the lien of Vanmeter to that of the mortgagees, the decree is reversed and cause remanded for further proceedings and decree in conformity with this opinion.

*B. & A. Monroe* for plaintiff; *Morehead & Reed and J. T. Morehead* for defendants.