## HUNTER vs. WATSON.

*Sixth District Court for Sacramento Co., November,* 1857.

EJECTMENT—POSSESSION—NOTICE.

A creditor taking real estate in satisfaction of a preexisting debt, holds it free of all equities of which he had not notice.

Possession is equivalent to notice of an equity in the occupant, arising from an acquiescence by the grantor of the purchaser in the sale by another to the occupant, though not of an equity arising from an unrecorded deed to him from the purchaser's grantor.

The facts are fully reported in the opinion.

*Moore & Welty,* for plaintiffs.

*Crocker, McKune & Robinson,* for defendants.

BOTTS, J.—This is an action of ejectment. A jury having been waived, it devolves upon the court to find the facts, and apply the law. The plaintiff obtained a judgment in this court, upon the 11th day of October, 1855, against one Glen, for the sum of $750 ; issued execution, which was levied upon the premises described in the complaint, upon the 27th day of June, 1856 ; on the 24th day of July, 1856, the property was sold by the sheriff, under said levy, and purchased by the plaintiff, for the sum of $600. The receipt of the purchase money was endorsed on the execution, and signed by the plaintiff. On the 29th day of January, 1857, no offer having been made to redeem, the sheriff conveyed the property to the plaintiff.

The defendants are in possession, and claim, as the lessees of one Hubbard, the administrator of Knox. One McPherson was the owner of this property on the 25th day of January, 1851 ; being indebted to one Forbes, and Forbes being desirous of concealing his property from his creditors, McPherson conveyed to Glen, with a secret trust for Forbes. Glen sold the property to Knox, for a valuable consideration, which was paid to Forbes. Glen's conveyance to Knox is dated the 20th day of September, 1851. Knox had no knowledge of the fraudulent object of the conveyance to Glen. Knox failed to record his conveyance. Knox died on the — day of ——, 1854. On the — day of ——, Glen executed a conveyance of the premises to Knox and his heirs, which was recorded on the 27th day of March, 1856. Knox's administrator was in the notorious possession of the property at the time of the plaintiff's purchase. The defendants hold under a lease from Knox's administrator. The monthly value of the premises, since the 27th of January, 1857, has been fifty dollars.

Upon this state of facts, this question is presented : Is the plaintiff, a subsequent *bona fide* purchaser, entitled under the statute to priority over Knox's unrecorded deed ? First, it is contended that obtaining the property, as he did, in discharge of a preëxisting debt, he is, in fact, no subsequent purchaser at all ; and this seems to have been the view taken in some of the earlier decisions. They were founded upon

the supposition, that by such a purchase, the creditor gave nothing surrendered nothing, and was merely subrogated to the position of the judgment debtor, and, consequently, took the estate subject to all the equities with which it might be encumbered in the hands of the debtor. So it was held, that a negotiable note, taken in payment of a preëxisting debt, carried all its equities along with it. See *Dickerson* vs. *Tillinghast*, 5 *Paige* 221. In truth, the two cases rest on the same basis, and must stand or fall together. But it is apparent that the creditor, who takes either an estate secretly encumbered, or a negotiable note with offsets attached, is deluded into the surrender, at least, of his right of action on the original debt, and may be lulled into a fatal security. Hence it is, that our supreme court, in accordance with the later and better authority, have held, in the late case of *Payne* vs. *Bensley*, that the holder of a negotiable note, taken as collateral security for a preëxisting debt, holds it free of equities; and in the same spirit, I believe they will hold, as I do, that the plaintiff took this property free from any equity of Knox's representatives of which he had no notice.

But it is said that Knox's representative was in the notorious possession of the property at the time of Hunter's purchase, and that, in law, notorious possession is notice of the equitable title of the occupant. I must confess that, upon this subject, the supreme court have been backing and filling, until it is difficult to ascertain their present latitude and longitude. But we must do our best to work up the reckoning.

In *Call* vs. *Hastings*, 3 *Cal.* 179, the court said the registry act was only intended to protect subsequent purchasers, without notice, either actual or *constructive*. In *Mesick* vs. *Sunderland*, they declared that the registry act had abrogated all constructive notice, except that arising from registry. On the argument of *Bird* vs. *Dennison*, a majority of the court avowed themselves fixed in the doctrine of *Mesick* vs. *Sunderland*. In *Lick* vs. *Stafford* they said that possession, though not of itself sufficient to prove notice, might be given in evidence, as tending to prove it; as if, under our constitution, the court could instruct upon the weight of testimony, after it is admitted. Then, in *Ellis* vs. *Janes*, they held that possession was notice of the equity arising from a contract of purchase, but not of the equity arising from the possession of an unrecorded deed. At last, in *Bryan* vs. *Ramirez*, they unequivocally declare, that possession is equivalent to

notice of an equity arising from an acquiescence in the purchase from another. But the plaintiff contends that, although the court has receded from the broad ground assumed in *Mesick* vs. *Sunderland* they have never retreated farther than the doctrine in *Ellis* vs. *Janes*, where they drew the distinction between the holder of an equity and the grantee of an unrecorded deed. In this position, it would seem that he is correct; although I must frankly confess that I do not perceive the ground upon which the distinction rests. Possession never had, logically, any tendency to establish the fact of the existence of an equitable title in the occupant; much less did the mere fact of occupancy establish the inference, in a reasonable mind, that all the world must know the title of the occupant. No such absurdity ever found a lodgment in the minds of the sages of the law. But it was an arbitrary, despotic rule, adopted from motives of supposed policy. It was urged, that the rule would afford great protection to latent equities, and would work no injury to the innocent purchaser of the legal title; because, in the face of the rule, he would always enquire of the occupant concerning his equities before he purchased. After the adoption of the rule, it was held that the purchaser either had enquired and been informed, or that he must suffer from his own neglect. When the registry system first came in vogue, the provision was, that the unrecorded deed should be absolutely void, except as between grantor and grantee. But even here, courts of equity held that if a subsequent purchaser knew that the property had been bought and paid for by another, his own purchase would be fraudulent and void. See 1 *Burrows*, 474; 2 *Mass.*, 508; 3 *Mass.*, 574; and the opinion of chancellor Walworth, *Dickinson vs. Tillinghast*, 5 *Paige*, 221. After this doctrine had been thoroughly settled by the courts, it came to be recognised by the adoption, into the registry statutes, of the words " *bona fide*" purchaser; the unrecorded prior deed should be void as against subsequent *bona fide* purchasers, *only*. It was plain enough to see at whom the statute squinted as *mala fide* purchasers: all those who were infected with notice. And here it was universally held, that possession should be, as of old, notice of the relation the occupant held to the property. See the Massachusetts authorities before cited; 11 *Wend.*, 442; 8 *Wend.*, 620; 6 *Wend.*, 213; 9 *Cowen*, 120; 7 *Watts*, 625; 4 *Dana*, 258, etc. I cannot perceive anything in the

nature of occupancy, that authorises the presumption, that a purchaser knows that his grantor stood by, and permitted the occupant to buy of another, and yet does not apprise him that the occupant holds an unrecorded deed from his grantor. But I suppose it is my duty to look through the glasses of the supreme court, even if I see through them darkly.

The plaintiff is to have judgment for the possession of the premises described in the complaint, for damages, and his costs of suit. Let judgment be entered accordingly.