JUDGE WILLIAMS
dissenting from the opinion of the majority of THE COURT, DELIVERED THE FOLLOWING OPINION:
I cannot concur in that part of the opinion which gives to the mortgagee in an unrecorded mortgage a priority over the purchaser of the land at execution sale, in which the creditor obtained his execution and had the land levied on prior to the recording of the mortgage, in the county where the land was situated, and in the absence of any actual notice to him.
Our laws give a lien to the execution creditor from the time his execution is placed in the hands of the proper officer, which, on a levy, becomes more than an equity, for it grows into an inchoate legal title as to the property levied on after the sale, and before the conveyance by the officer, which becomes perfect after the conveyance, as said by this court in Halley vs. Oldham, &c. (5 B. Mon., 239), which inchoate legal title relates back to the date when the execution reached the officer’s hands.
That the execution creditor without actual notice got a prior lien and right of sale over an unrecorded mortgage, was expressly adjudged in Helm, vs. Logan’s heirs (4 Bibb, 78), the principle and argument of which remains unshaken to this day, as can be abundantly shown, and the reasoning of which is unassailable.
The court in no subsequent case has professed to overrule it; indeed, the facts in the subsequent cases, so far from requiring, did not authorize even its overruling. Whilst its arguments were reaffirmed in the subsequent case of Graham vs. Samuels, yet this, like all subsequent cases referred to, was the sale of land under execution which the vendor had previously sold by bond or unrecorded deed, and which rests on different principles. *288 And this was the case in Campbell vs. Mosby (Litt. Select Cases, 358), Chinn vs. Buller (3 Dana, 547), and Morton vs. Roberts (4 Dana, 258).
This court said in Halley vs. Oldham, relative to Camp- ■ bell vs. Mosby, and Morion vs. Roberts, that “ the execution purchaser seems to be treated, in the reasoning of the court, as an ordinary purchaser, liable to be affected by notice at any time before he actually receives a deed conveying the title; but in this respect the argument goes beyond the facts of the case, and is, therefore, not to be regarded as a judicial decision upon the question.”
The truth and potency of this will be seen by looking into the facts of the leading case of Morton vs. Roberts (4 Dana). In that case Roberts held the unrecorded deed of Lewis, and had actual possession of the land when an execution creditor of Lewis levied on the land, and had it sold for a nominal sum, and a son of the creditor became the purchaser. Here the creditor and purchaser had notice by actual occupancy that Lewis did not own the land, and Roberts did. The consciences of both creditor and purchaser were therefore affected, and similar facts will appear in all the cases.
In a sale by bond or unrecorded deed of land, the vendor parts with the entire propertjr, but holds the title in trust for the vendee; hence an execution creditor in such case, as well as the purchaser, when they have notice before the sale, know that no property is sold, but only a mere naked legal title which is held in trust for the vendee, and of course courts of equity will hold the purchaser under the execution, as it held the execution debtor, a trustee for the vendee.
But a mortgagee is the trustee of his mortgagor, and though he gets the legal title, it is simply to secure a lien for the debt, or, in other words, he holds the legal title in *289 trust, first to pay the mortgage debt, and then for the use of the mortgagor; therefore,-the mortgagee in equity is deemed but a lien creditor, the property being still in the mortgagor whilst the title is in the mortgagee.
The Revised Statutes (1 Stant., 280 ) provides that “ no deed of trust or mortgage, conveying a legal or equitable title to real or personal estate, shall be valid against a purchaser for a valuable consideration without notice thereof, or against any creditor until such deed shall be acknowledged or proved according to law, and lodged-for record.”
In this case the execution creditor obtained his execution and had it levied before the mortgage was lodged for record. It is not insisted that he had airy other notice - than such as is given by the recording of the mortgage. What would have béen the rights and equities of the parties had the mortgagee, after the recording of his mortgage, and before the execution sale, filed his bill against the mortgagor and his execution creditor to foreclose the mortgage and enjoin the execution sale, and claiming priority by virtue of his mortgage of anterior date, but recording subsequent to the execution and levy?
Can there be any doubt that the chancellor, in distrib- ' uting the proceeds of the land, would first have discharged the execution lien? If not so, the statute is nugatory; the law secures to the execution creditor a lien. The statute says the mortgage shall only affect him from its recording; but the court would say it should affect him from its date; the court would then disregard the legislative will, and let loose upon creditors the very mischiefs that the statute was designed to restrain.
*290 A mortgagee might lay in wait with his mortgage in his pocket until some unsuspecting victim should become an execution creditor, and have the property levied on; but all to be destroyed by a masked battery in the way of a secret mortgage, for the first time to be lodged for record after the levy, but before the sale.
Is this statute requiring mortgages to be recorded before they shall affect creditors, to have any effect ?
Believing that equity would in such cases not hesitate to secure the prior lien to the execution creditor, let us see how the recording of such mortgage can affect an execution purchaser. Mortgages, as before said, in equity are deemed as mere liens, the mortgagee being a trustee to pay out of the mortgaged premises the debt, and surrender the remainder to the mortgagor.
The execution creditor, by his ji. fa. and levy, before the recording of the mortgage, gets a prior lien, which the law secures to him, and of couse must give him the means to effectuate and make it available, else it still amounts to nothing, but becomes a “ mere thing of delusion.” How is his lien to be effectuated but by carrying out the mandates of the execution by sale? If the creditor has the right to sell, some one must have the right to purchase; for there is no such anomaly and absurdity in the law as giving the right of sale to the creditor, and at the same time prohibiting the world from purchasing.
The right of sale to the execution creditor carries to the world the right of purchasing. If the conscience of the execution creditor remains untouched by the subsequent recording of the mortgage, and he still has the right of sale, the purchaser under his execution remains untouched, and has the right to purchase, else, as said in 4 Bibb there would be the absurdity of sale in the execution creditor, but the right of purchase in no one, not *291 even himself; for the world would not purchase, and if he did, he loses his rights as a prior lien execution creditor, and becomes a purchaser with notice; his execution is satisfied, and he gets nothing.
This whole absurdity is produced by a confused attempt of the courts to reason analogous principles from dissimilar cases; as between the purchaser of the property by bond or unrecorded deed and a mortgage there is no analogy; their liens are different; the trust is different; the equities are different; the real or substantial ownership different. And when the mortgagee of an unrecorded mortgage shall stand by with his mortgage in his pocket until a creditor of the mortgagor shall get his execution and levy, and then, when he gets his mortgage recorded, instead of filing his bill for foreclosure and sale, and settling the prior equities and liens, permits a sale, he by his own laches precludes himself from a right to demand a favorable consideration from the chancellor. At least, if the execution sale be set aside at his instance for some informality, the execution purchaser should be subrogated to the prior lien of the execution creditor, so far as he may have paid it by the purchase of the property.
The mortgagee, in asking equity, should do equity; and before he can strip the execution purchaser of his legal title and legal advantage, acquired by the purchase under the execution and sheriff’s deed, the purchaser must be reimbursed out of the property.